IN THE UNITED STATES COURT OF FEDERAL CLAIMS

————————

No. 20-935 T

(Judge Marian Blank Horn)

MATTHEW and KATHERINE KAESS CHRISTENSEN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant

————————

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

————————

February 25, 2022

/s/ Stuart E. Horwich
Horwich Law LLP
20 Old Bailey, 5th Floor
London  EC4M 7AD
United Kingdom
011 44 20 8057 8013
seh@horwichlaw.com
Counsel for Plaintiffs

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

**I.   The Code Provisions Result in Double Taxation As French Taxes Cannot Offset NIIT in Contravention of the French Treaty's Purpose of Avoiding Double Taxation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

   **A.   NIIT is an Income Tax that is Covered Under the Terms of the French Treaty** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

   **B.   Unlike the French Treaty, the Code Provides a Three-Step Analysis Before a Taxpayer Can Claim a Foreign Tax Credit** . . . . . . . . . . . . . . . . . . 7

      1.   The Tax in Question Must Be a Foreign Income Tax Meeting the Requirements of a Creditable Tax Under the Provisions of Code Section 901. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      2.   Code Section 904 Limits the Use of Foreign Tax Credits to Offset U.S. Source Income or Different Categories of Foreign Source Income. .8

      3.   Once a Foreign Tax Satisfies Code Sections 901 and 904 Rules, Code Section 27 Allows a Foreign Tax Credit that Offsets U.S. Income Tax. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**II.   The French Treaty Provides for a Foreign Tax Credit Against the NIIT** . . . . . . . . 11

   **A.   Article 24(2)(a) Provides for a Foreign Tax Credit to Offset the NIIT** . . . . . 12

      1.   Defendant's Interpretation of the French Treaty is Not Entitled to Deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      2.   Defendant's Interpretation Undermines the Structure of the French Treaty and Renders Moot a Series of Interrelated Treaty Provisions. . . . . . . . . .15

      3.   Denying a Foreign Tax Credit Based on the Enactment of a New U.S. Income Tax Does Not Comport with the General Treaty Principle that a Foreign Tax Credit is Allowed Against a U.S. Income Tax. . . . . . . . . . .16

i

4.   Relevant Precedents Interpreting the Provisions of Article 24(2)(a) Confirm that a Foreign Tax Credit is Allowed Under the Terms of the French Treaty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

**B.**   **Article 24(2)(b) Provides an Independent Basis for a Foreign Tax Credit**. . 24

**III.**   **<u>Conclusion</u>**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

TABLE OF AUTHORITIES

**Rules of the United States Court of Federal Claims**

Rule 56(a) of the Rules of the U.S. Court of Federal Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Case Law**

*Am. Air Liquide, Inc. & Subs. v. Comm'r*, 116 T.C. 23 (2001). . . . . . . . . . . . . . . . . . . . . . . . 22
*Bacardi Corp of Am. v. Domenech*, 311 U.S. 150 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
*Burnet v. Chicago Portrait Co.,* 285 U.S. 1 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
*Cook v. United States*, 288 U.S. 102 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
*El Al Israeli Airlines v. Tseng*, 525 U.S. 155 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
*Eshel v. Comm'r*, 831 F.3d 512 (D.C. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . .11, 14, 17, 20, 24
*Filler v. Comm'r*, 74 T.C. 406 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
*Great-West Life Assurance Co. v. United States*, 678 F.3d 180 (Fed. Cir. 1982). . . . . . . . . . . . 13
*Haver v. Comm'r*, 444 F.3d 656 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
*Iceland Steamship Co. Eimskip v. U.S. Dep't of the Army*, 201 F.3d 451 (D.C. Cir. 2000) . . . . .14
*Jordan v. Tashiro*, 278 U.S. 123 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
*Jamieson v. Comm'r*, 584 F.3d 1074 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
*Kappus v. Comm'r*, 337 F.3d 1053 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25, 26
*Kolovrat v. Oregon*, 366 U.S. 187 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
*Marriott International Resorts v. United States*, 586 F.3d 962 (Fed. Cir. 2009). . . . . . . . . . . . .4
*Missouri v. Holland*, 252 U.S. 416 (1920) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
*National Westminster Bank v. United States*, 512 F.3d 1347 (Fed. Cir. 2008). . . . . . . . . . . . . . 14
*North West Life Insurance Co. of Canada v. Comm'r*, 107 T.C. 363 (1996). . . . . . . . . . . . . . . 14
*Sumitomo Shoji America Inc. v Avagliano*, 457 U.S. 176 (1982). . . . . . . . . . . . . . . . . . . . . .13, 14
*Toulouse v. Comm'r*, 157 T.C. 49 (2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 13, 25
*TVA v. Hill*, 437 U.S. 153 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*United States v. Butler*, 297 U.S. 1 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*United States v. Stuart*, 489 U.S. 353 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15
*Xerox v. United States*, 41 F.3d 647 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 20
*Zschernig v. Miller*, 389 U.S. 429 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

**Treaties**

*Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital*, Fr.-U.S., Aug 31, 1994, 1963 U.N.T.S. 67, as supplemented by Protocols dated Dec. 8, 2004 and Jan. 13, 2009. . . . . . . . . .3, 5-7, 11, 12, 14-27

## Statutes

Health Care and Education Reconciliation Act of 2010, Pub. L. 111-152, 124 Stat. 1029, Section 1402(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
American Jobs Creation Act of 2004, Pub. L. 108-357, 118 Stat. 1418, Section 421(a)(1). . . . .21

Internal Revenue Code (26 U.S.C.)
      Code Section 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
      Code Section 27. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 9, 11, 18, 19
      Code Section 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
      Code Section 67. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
      Code Section 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
      Code Section 469. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
      Code Section 475. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
      Code Section 901. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8, 9, 11, 18, 19, 20
      Code Section 904. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8, 9, 11, 18, 19
      Code Section 1411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 22
      Code Section 6511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20
      Code Section 7852. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

## Treasury Regulations and Other Taxation Materials

Income Tax Regulations (26 C.F.R.):

      Treas. Regs. Sec. 1.901-2(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .5
      Treas. Regs. Sec. 1.1411-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Staff of the Joint Comm. On Tax'n, General Explanation of Tax Legislation Enacted in the 111th Congress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 19

Treasury Decision 9644, 78 FR 72393-72449, December 2, 2013, as corrected by 79 FR 18161, April 1, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
Treasury Dep't Explanation of the Model Income Tax Convention – 2006 . . . . . . . . . . . . . . . 19

## Other Materials

Blanchard, The Tax Court's Erroneous Decision in *Toulouse*, 50 *Tax Mgm't Int'l J.*, No. 10 (Oct. 1, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Carroll, Lewis, *Through the Looking Glass*, in *The Complete Works of Lewis Carroll*, 214 (First Modern Library ed. 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 20
Gould, "The Tax Court's Flawed Analysis in *Toulouse* Should Be Challenged", *Tax Notes International*, vol. 103, p. 1695-1696 (Sept. 27, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
Rosenbloom and Shaheen, "*Toulouse*: No Treaty-Based Credit?", *Tax Notes International*, vol. 104, pp. 417-422 (Oct. 25, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iv

QUESTION PRESENTED

Does the income tax treaty between the United States and France, which is designed to avoid double taxation with specific provisions to ensure a taxpayer can claim foreign tax credits to avoid paying tax in both France and the United States on the same income, allow Plaintiffs a foreign tax credit in this case?

STATEMENT OF THE CASE

Plaintiffs believe that the following facts are not in dispute and form the basis for Plaintiffs' motion for summary judgment.

1.      Plaintiffs, Matthew Christensen and Katherine Kaess Christensen, are married U.S. citizens who resided (and continue to reside) in Paris, France.  Exhibit 1:  Personal Documentation.

2.      Plaintiffs timely filed a joint U.S. federal income tax return for the year 2015.  Plaintiffs duly reported several items of income on this return, including: (i) earned income of $369,373; (ii) U.S. source passive income of $7,976; and (iii) foreign source passive income of $101,353. Before taking into account any foreign tax credits, Plaintiffs had a $76,376 U.S. federal income tax liability on this income arising under Chapter 1 of the Internal Revenue Code of 1986 (26 U.S.C.) (the "Code").  Complaint, Exhibit A.

3.      The maximum amount of U.S. federal income tax under Chapter 1 that could have applied to the passive income (points (ii) and (iii) above), taking into account the long-term capital gains rates, was $15,968.  Exhibit 2:  Horton Affidavit, ¶ 5.

4.      In addition, Code Section 1411 (in Chapter 2A of the Code) imposed a 3.8 percent "net investment income tax" (or "NIIT") on Plaintiffs' "net investment income" totaling $4,155 (income from points (ii) and (iii) above).  Of that $4,155 NIIT liability, $3,851 related to the $101,342 of foreign source investment income.  Complaint, Exhibit A.

5.      As French tax residents, Plaintiffs also incurred French income tax equal to $140,398 on their earned income and non-U.S. source investment income, of which $113,745 was attributable to the earned income and $26,635 was attributable to their passive foreign source investment

income.[1]  The Defendant agrees that this French tax was paid and that the French taxes are generally creditable taxes.  Exhibit 2:  Horton Affidavit; Exhibit 3:  Email from Department of Justice dated January 27, 2022.

6.     On their originally filed 2015 return, Plaintiffs claimed a foreign tax credit that eliminated the Chapter 1 U.S. federal income tax liability arising on their earned income and their foreign source investment income but did not claim a foreign tax credit to offset the $3,851 of NIIT.  Complaint, Exhibit A.

7.     Plaintiffs filed a claim for refund on January 12, 2020, seeking a refund of the $3,851 of NIIT, *inter alia*, on the basis that a credit for such tax would be allowable under the terms of the French Treaty.  Complaint, Exhibit A; Answer, ⁋ 5.

8.     On February 20, 2020, the Defendant denied this refund claim as untimely.  Complaint Exhibit B; Answer, ⁋ 6.

9.     Plaintiffs brought the instant refund suit as the refund claim was timely filed and that they are allowed a foreign tax credit based upon Article 24 of the French Treaty.  Complaint.

The Defendant now agrees that the refund suit has been timely filed as it relates to whether Plaintiffs are eligible for a foreign tax credit under the provisions of the French Treaty.[2]

---

[1]     With exceptions not relevant here, France does not tax U.S. citizens residing in France on U.S. source investment income.  *See* Article 24(1)(c), of the *Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital*, Fr.-U.S., Aug 31, 1994, 1963 U.N.T.S. 67, as supplemented by Protocols dated Dec. 8, 2004 and Jan. 13, 2009 (the "French Treaty").

[2]     Plaintiffs' refund claim also argued that a refund may be allowed under the terms of a social security agreement between the United States and France (a so-called "totalization agreement").  Plaintiffs are not pursuing that claim in this refund suit.

## ARGUMENT

**I.**     **The Code Provisions Result in Double Taxation As French Taxes Cannot Offset NIIT in Direct Contravention of the French Treaty's Purpose of Avoiding Double Taxation.**

The present case focuses on whether Plaintiffs may claim a foreign tax credit to eliminate a U.S. tax liability arising from the net investment income tax, or NIIT, based on Article 24 of the French Treaty.  The parties believe that the case can be resolved under Rule 56(a) of the Rules of the U.S. Court of Federal Claims ("RCFC"), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See, e.g., Marriott International Resorts v. United States*, 586 F.3d 962 (Fed. Cir. 2009).  In this case, the facts giving rise to the instant dispute are straightforward and noncontroversial – Plaintiffs incurred very high rates of French tax on certain investment income and seek to apply foreign tax credits to eliminate the duplicate U.S. income tax liability on that same investment income.

The Defendant does not contest that Plaintiffs incurred such French tax or that Plaintiffs are entitled to a foreign tax credit to eliminate certain U.S. tax on that income (the U.S. tax liability arising under Chapter 1 of the Code).  The Defendant argues, however, that no foreign tax credit is allowed against the NIIT, even though the Defendant recognizes this results in double taxation.  The Defendant asserts this position despite the French Treaty's specific purpose of avoiding the double taxation that the Defendant now seeks to impose.  The Defendant's position is not based on Supreme Court precedents regarding treaty interpretation; to the contrary, the Defendant simply ignores the text of the French Treaty, applying convoluted logic that renders moot many interlocking provisions of the French Treaty, to arrive at an outcome completely at odds with its purpose.

The operation of the U.S. domestic provisions of the Code, which result in double taxation, are crucial to this analysis.  The U.S. domestic provisions preclude a foreign tax credit for the NIIT outside the application of the French Treaty.  At the same time, the domestic provisions provide the backdrop for the analysis that shows that individuals entitled to the benefits of the French Treaty are permitted a treaty-based foreign tax credit against the NIIT.

**A**. **NIIT is an Income Tax that is Covered Under the Terms of the French Treaty**

The NIIT was enacted in 2010 as part of the Health Care and Education Reconciliation Act of 2010, Pub. L. 111-152, sec. 1402(a)(1), 124 Stat. at 1061.  The tax is imposed rate of 3.8 percent on a taxpayer's net investment income to the extent that the taxpayer's modified adjusted gross income exceeds certain thresholds.  Codified under Code Section 1411 and in its own separate Chapter 2A, the NIIT is in addition to the normal income tax that is imposed on the same income under Chapter 1 of the Code.  Consequently, a taxpayer pays the NIIT in addition to normal graduated income tax rates or capital gains tax rates on net investment income.

Although the NIIT is commonly viewed as a supplemental health insurance tax that forms part of the backbone of the so-called Obamacare provisions and is entitled "Unearned Income Medicare Contributions," the NIIT is not paid over to any social security trust fund maintained by the U.S. Government.  *See* Staff of the Joint Comm. On Tax'n, General Explanation of Tax Legislation Enacted in the 111th Congress at 364 ("No provision is made for the transfer of the tax imposed by this provision [the NIIT] from the General Fund of the United States Treasury to any Trust Fund.").  The NIIT is an income tax, imposed using concepts identical to those already contained in Chapter 1 of the normal income tax provisions, and meets the definition in the Code for a tax on income as that concept is understood in the foreign tax credit provisions.  *See*, *e.g.*, Treas. Regs. Sec. 1.901-2(b)(4); Treas. Regs. Sec. 1.1411-1(a)

("Except as otherwise provided, all Internal Revenue Code (Code) provisions that apply for chapter 1 purposes in determining taxable income * * * also apply in determining the [NIIT]."[3]

Article 2(1)(a) of the French Treaty defines the types of U.S. taxes to which it applies. This article provides that, in the case of the United States, the treaty covers, *inter alia* "(i) the Federal income taxes imposed by the Internal Revenue Code (but excluding social security taxes) * * *." Although the NIIT did not yet exist at the time of the ratification of the French Treaty, Article 2(2) contemplates the eventuality of new taxes by providing that "[t]he Convention shall apply also to any identical or substantially similar taxes that are imposed after the date of the signature of the Convention in addition to, or in place of, the existing taxes." As a result, the NIIT is a covered income tax under the French Treaty. For example, the French Government would be required to allow as a foreign tax credit against French income taxes the NIIT arising on the sale of U.S. real property by a U.S. citizen living in France. *See* Articles 13(1) and 24(1)(b)(iii).[4]

The NIIT is a U.S. income tax applied on items of income on which a French resident U.S. citizen would also pay French taxes. As discussed below, however, absent application of the French Treaty, the Code would not provide for a foreign tax credit to offset the NIIT and instead would result in double taxation of the same income.

---

[3]     Code Sec. 1411 contains a number of terms commonly used in computing normal income tax under Chapter 1 and cross references directly to a number of Chapter 1 provisions, such as Code Secs. 67(e), 469, 401 and 475.

[4]     The 2009 protocol corrected a numbering error where the United States' version of the French Treaty had paragraph 1 and paragraph 2 of Article 24 reversed from France's version. The 2009 protocol redesignated the U.S.'s version without changing the actual language relevant to this case.

**B.** **Unlike the French Treaty, the Code Provides a Three-Step Analysis Before a Taxpayer Can Claim a Foreign Tax Credit**

U.S. citizens are subject to U.S. federal income tax on their worldwide income, whether or not they are U.S. residents. Code Sec. 1. Therefore, although Plaintiffs live in France and are not U.S. tax residents, they are still liable for U.S. federal income tax on, *inter alia*, their foreign source investment income. To avoid double taxation where both France and the United States seek to tax the same income, an elaborate foreign tax credit mechanism exists in the Code and has remained unchanged since 1954, well before the French Treaty's ratification in 1994. The Code allows a foreign tax credit for individuals following a three-step approach: (1) the foreign levy in question must meet the definition of an income tax under Code Section 901 *et seq*., (2) any such foreign levy must comply with the limitation and timing provisions contained in Code Section 904, and (3) a credit must be available for the tax under Code Section 27(a). Each of these points is discussed in detail below.

1.   The Tax in Question Must Be a Foreign Income Tax Meeting the Requirements of a Creditable Tax Under the Provisions of Code Section 901

Code Section 901 provides that a taxpayer may elect a foreign tax credit against taxes imposed by Chapter 1 of the Code for "the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country * * *." Code Sec. 901(b)(1). Elaborate rules define whether a particular foreign levy is a creditable "income tax". Other Code Section 901 rules provide that certain foreign levies, even if they meet the "tax on income" requirement, are not otherwise creditable.[5]

---

[5]   For example, a tax credit is not allowed for foreign taxes paid to a country with which the United States does not have diplomatic relations. Code Sec. 901(j).

The Code Section 901 determination of whether a foreign levy is a creditable income tax is central to the operation of the U.S. foreign tax credit system.  Rather than look to a particular item of income and determine whether it has been subjected to foreign income tax, the U.S. foreign tax credit system bifurcates the analysis such that it is perfectly possible to credit a foreign income tax arising, for example, in France, against foreign source income arising, for example, in Switzerland.[6]  Thus, taxpayers first compute the total amounts of foreign taxes they have incurred and, then, as described below, Code Section 904 determines the limitation on the use of such foreign tax credits.

> 2.      Code Section 904 Limits the Use of Foreign Tax Credits to Offset
>         U.S. Source Income or Different Categories of Foreign Source Income

Code Section 904 is entitled "Limitation on Credit" and provides that "[t]he total amount of credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year."  Code Sec. 904(a).  A taxpayer cannot credit foreign taxes against U.S. source income or claim a foreign tax credit in excess of the taxpayer's total U.S. tax liability.  Code Section 904(d) further subcategorizes income into limitation categories (often referred to as "baskets") to preclude a taxpayer from, for example, crediting highly taxed foreign active income (income falling in the

---

[6]      To illustrate the point, assume a U.S. citizen has 100 of general limitation income in France taxable at the French tax rate of 45% and 100 of general limitation income in Switzerland subject to Swiss tax at 10%.  Further assume that, before the operation of the foreign tax credit rules, the U.S. citizen has a 25% effective U.S. tax rate on both the French and the Swiss income (50 of U.S. tax on 200 of income).  The total French (45) plus Swiss (10) of tax would completely offset the U.S. tax liability (50).  Had the U.S. foreign tax credit system operated on a country-by-country basis, the U.S. taxpayer would have had no U.S. tax liability on the French income and a U.S. top up tax due of 15 on the Swiss income.

general limitation basket) against lightly or untaxed foreign source investment income (income falling in the passive limitation basket).[7]

Code Section 904 does not, however, define the U.S. "tax against which such credit is taken" and instead prevents "cross crediting" of foreign taxes against U.S. source income or foreign source income that falls within a separate limitation category. The policy achieved by Code Section 904 is not undermined by including any other U.S. income tax as eligible to be offset by foreign tax credits.[8]   Code Section 904 limits the amount of a foreign tax credit; it does not define the U.S. taxes against which a foreign tax credit is allowed.

3.   Once a Foreign Tax Satisfies Code Sections 901 and 904 Rules, Code Section 27 Allows a Foreign Tax Credit that Offsets U.S. Income Tax.

Once a taxpayer determines the amount of creditable foreign taxes that he or she has incurred and any limitations on the amount of that credit, the Code entitles a taxpayer to a foreign tax credit as provided in Code Section 27(a).  Code Section 27(a) dovetails with the foreign tax credit provisions and allows, in accordance with the language in Code Section 901, a foreign tax credit against the normal taxes imposed by Chapter 1 of the Code.  *See* 26 U.S.C.

---

[7]   Following on from the example in fn. 6, *supra*, if the Swiss income was not earned income but instead was passive investment income, the French tax of 45 would fall within the "general limitation" basket while the Swiss tax of 10 would fall within the passive basket.  The taxpayer would not be able to credit the excess 20 of French tax (the amount by which the actual 45 in French tax exceeded the 25 of U.S. tax on that income) against the Swiss passive income. The taxpayer would therefore have to pay a U.S. top up tax of 15 on the Swiss passive income and would have excess foreign tax credits in the general limitation that potentially could be used against other general limitation foreign source income.

[8]   To continue the example, if the NIIT applied to the French and Swiss income, the U.S. income tax would be 28.8 on each country's income (25 of normal income tax and 3.8 of NIIT). The Code Section 904 limitation would allow the entire 45 of French tax to offset the 28.8 of U.S. income tax on such French income.  The Code Section 904 limitation would require a top up tax of 18.8 on the Swiss income.

Chapter 1 ("Normal Taxes and Surtaxes").  Other chapters of the Code, imposing social security, self-employment taxes, estate and gift taxes, and excise taxes, cannot be offset by a foreign tax credit.[9]

As the NIIT appears in Chapter 2A and not Chapter 1, Plaintiffs would be required to pay the NIIT at the same time as paying foreign income taxes that would otherwise have offset the NIIT.  In effect, the Code's framework results in double taxation, with income tax being paid on the same income to both the foreign and the U.S. tax authorities.

The question squarely before this Court, therefore, is whether the French Treaty, the stated purpose of which is to avoid double taxation, provides for a foreign tax credit where none would be permitted under the Code's foreign tax credit provisions.  The Defendant, in a Treasury Decision shortly after the enactment of the NIIT, took the view that on the basis of the terms of its model treaty (which are substantially identical to the language of the French Treaty), no such treaty relief would be allowed.  The decision stated:

> The Treasury Department and the IRS also received comments asking whether United States income tax treaties may provide an independent basis to credit foreign income taxes against the section 1411 tax. The Treasury Department and the IRS do not believe that these regulations are an appropriate vehicle for guidance with respect to specific treaties. An analysis of each United States income tax treaty would be required to determine whether the United States would have an obligation under that treaty to provide a credit against the section 1411 tax for foreign income taxes paid to the other country. *If, however, a United States income tax treaty contains language similar to that in paragraph 2 of Article 23 (Relief from Double Taxation) of the 2006 United States Model Income Tax Convention, which refers to the limitations of United States law (which include sections 27(a) and 901), then such treaty would not provide an independent basis for a credit against the section 1411 tax.*

---

[9]      In 1994, when the French Treaty was ratified, the other chapters of the Code imposing a substantive tax liability were:  Chapter 2 – Self-Employment Tax; Chapter 3 -- Withholding of Tax on Nonresident Aliens and Foreign Corporations; Chapter 11 – Estate Tax; Chapter 12 – Gift Tax; Chapter 13 – Generation Skipping Tax; Chapter 21 – Federal Insurance Contributions Act; Chapter 22 – Railroad Retirement Tax Act; Chapter 23 – Federal Unemployment Tax Act; Chapter 23A – Railroad Unemployment Repayment Tax' Chapters 31 through 55 – A series of Excise, Environmental and Occupational Taxes.

Treasury Decision 9644 (the "Treasury Decision"), 78 FR 72393-72449, December 2, 2013, as corrected by 79 FR 18161, April 1, 2014 (emphasis added).

With no analysis whatsoever, the Defendant cuts through the elaborate treaty mechanism for how foreign taxes are credited and incorrectly presents Code Sections 27 and 901 as "limitations" when in fact it is Code Section 904 that operates to limits the amount of foreign tax that can be credited. The Defendant's interpretation ignores the purpose of the French Treaty to eliminate double taxation, renders a series of inter-related treaty provisions moot, fails to harmonize the treaty with the Code provisions, and ignores the general principle established by Congress that treaty foreign tax credit entitlement is wider than that contained in the Code, unless subject to a specifically legislated treaty override.

## II.   The French Treaty Provides for a Foreign Tax Credit Against the NIIT

Plaintiffs incurred French income tax equal to $140,398 in their 2015 tax year and the parties do not dispute that the entire amount of this tax meets the definition of a creditable tax under the provisions of Code Section 901. Plaintiffs incurred $26,635 of French tax on their foreign source passive income, which exceeds the sum of the Chapter 1 income tax ($15,837) plus the NIIT ($3,851) on that same income. The limitations provisions of Code Section 904 therefore do not operate here to reduce the amount of foreign tax that they can claim against such foreign source passive income.

This question of whether a foreign tax credit is allowed for the NIIT based on the terms of the French Treaty is a case of first impression for this Court. Indeed, it appears that there has been only one other decision on this issue, a case recently decided by the U.S. Tax Court, holding that the French Treaty did not allow for this credit. *Toulouse v. Comm'r*, 157 T.C. 49 (2021). The *Toulouse* Court, however, did not consider all the relevant provisions of the French

Treaty, as the petitioner in that case failed to raise certain treaty-based arguments that the Tax

Court acknowledged could have led to a different result.[10]

Plaintiffs here believe that two separate provisions of the French Treaty (Articles 24(2)(a)

and 24(2)(b)) provide for a foreign tax credit in this case, only one of which – Article 24(2)(a) –

was considered by the Tax Court in *Toulouse*.  As in a parallel case considering the creditability

of a different French income tax under the terms of the French Treaty,[11] Plaintiffs believe that

the Tax Court simply misapplied standard treaty interpretation principles in erroneously reaching

its conclusion under Article 24(2)(a).[12]

## A.      Article 24(2)(a) Provides for a Foreign Tax Credit to Offset the NIIT

Article 24(2)(a) of the French Treaty provides:

In accordance with the provisions and subject to the limitations of the law of the United States (*as it may be amended from time to time without changing the general principle hereof*), the United States shall allow to a citizen or a resident of the United States as a credit against the United States income tax:

(i) the French income tax paid by or on behalf of such citizen or resident * * *."

(Emphasis added.)  This article, according to the *Toulouse* Court "expressly state[s] that any

allowable foreign tax credit is subject to the limitations of U.S. tax laws and must be in

accordance with the Code.  Accordingly, for [the taxpayer] to prevail based on [Article 24(2)(a)],

---

[10]      *See Toulouse*, 157 T.C. at 58 fn. 4 ("Petitioner does not argue that she is entitled to relief under any other treaty provisions.  Accordingly, we express no view on the potential application of other provisions.").

[11]      *See*, *Eshel v. Comm'r*, 831 F.3d 512 (D.C. Cir. 2016), *reversing* 142 T.C. 197 (2014).

[12]      A number of commentators have criticized the *Toulouse* decision for precisely this reason.  *See*, *e.g.*, Rosenbloom and Shaheen, "*Toulouse*: No Treaty-Based Credit?", *Tax Notes International*, vol. 104, pp. 417-422 (Oct. 25, 2021); Gould, "The Tax Court's Flawed Analysis in *Toulouse* Should Be Challenged", *Tax Notes International*, vol. 103, p. 1695-1696 (Sept. 27, 2021); Blanchard, "The Tax Court's Erroneous Decision in *Toulouse*", 50 *Tax Mgmt. Int'l J.*, No. 10 (Oct. 1, 2021).

the Code must provide the credit if one exists." *Toulouse*, 157 T.C. at 60.  This analysis ignores

the treaty's purpose, its structure and its text, and a statutory precedent indicating that a treaty

foreign tax credit claim can exist when one is not allowed under the Code.  Moreover, as

demonstrated below, it fails to undertake the analysis required for the proper interpretation of a

treaty provision.

           1.       Defendant's Interpretation of the French Treaty is Not Entitled to
                           Deference

The standard for interpretation of an agreement between the United States and another

sovereign nation is well established.  When interpreting the words of such an agreement, "[t]he

clear import of treaty language controls unless 'application of the words of the treaty according

to their obvious meaning effects a result inconsistent with the intent or expectation of the

signatories.'"  *Sumitomo Shoji America Inc. v Avagliano*, 457 U.S. 176, 180 (1982).  The "shared

expectations" of the sovereigns govern the interpretation of the treaty as evidenced by the text

used in the agreement, unless the result does not accord with the literal language used.  *Great-

West Life Assurance Co. v. United States*, 678 F.2d 180, 183 (Fed. Cir. 1982).

Furthermore, "[t]he practice of treaty signatories counts as evidence of the treaty's proper

interpretation since their conduct generally evinces their understanding of the agreement they

signed."  *United States v. Stuart*, 489 U.S. 353, 368 (1989).  In response to a Freedom of

Information Act request,[13] the Defendant confirmed that no discussions took place between the

U.S. and French Governments at the time the NIIT was enacted and, after exhaustive discovery,

the Defendant has produced no evidence of any communications with the French Government

that accords with the Defendant's treaty interpretation.  Thus, absent any extrinsic evidence to

---

[13]      Exhibit 4:  Freedom of Information Act Response.

the contrary, as the Federal Circuit Court of Appeals stated in *Xerox v. United States*, 41 F.3d 647, 652 (1994) "[i]n construing a treaty, the terms thereof are given their ordinary meaning in the context of the treaty and are interpreted, in accordance with that meaning, in the way that best fulfills the purpose of the treaty."

　　　Two more principles are also relevant in the interpretation of a treaty.  First, ordinarily, the Executive Branch's interpretation of a treaty is given respect.  *El Al Israeli Airlines v. Tseng*, 525 U.S. 155, 168 (1999).  In cases where contemporary evidence shows the shared expectations of the treaty partners accord with the Executive Branch's interpretation, courts "must, absent extraordinarily strong contrary evidence, defer to that interpretation."  *Sumitomo*, *supra* at 185; *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) (great weight given to Executive Branch interpretation that accords with the negotiation history of the parties).  However, as in the case at bar, that respect evaporates when the Executive Branch's interpretation is not supported by negotiating history, diplomatic communications or the method by which the other sovereign has interpreted the treaty.  *See National Westminster Bank v. United States*, 512 F.3d 1347 (Fed. Cir. 2008); *Iceland Steamship Co. Eimskip v. U.S. Dep't of the Army*, 201 F.3d 451 (D.C. Cir. 2000); *Eshel v. Comm'r*, 831 at 521 (where the Internal Revenue Service asserts a meaning of a treaty without analysis of the shared expectations of the two sovereigns, its position "is the legal equivalent of trying to clap with one hand"); *North West Life Insurance Co. of Canada v. Comm'r*, 107 T.C. 363, 379 (1996) ("There is no authority for the proposition that a court construing a convention must follow the interpretation suggested by our Government when that interpretation runs contrary to what the Court concludes was the intent of the contracting parties.")

Secondly, "where a provision of a treaty fairly admits of two constructions, one restricting, the other enlarging, rights that may be claimed under it, the more liberal interpretation is to be preferred." *United States v. Stuart*, 489 U.S. at 368, quoting *Bacardi Corp of Am. v. Domenech*, 311 U.S. 150, 163 (1940); *Jordan v. Tashiro*, 278 U.S. 123, 128 (1928). The treaty between the United States and France has as one of its principal purposes to avoid what the Supreme Court has described as "the evil of double taxation." *Burnet v. Chicago Portrait Co.,* 285 U.S. 1, 7 (1932). Thus, the French Treaty should be read in a way to avoid that evil, not to perpetuate it.

The consequence here is that a treaty must be interpreted in accordance with the shared expectations of its parties based on the language used in a way that fulfills the treaty's purpose. Although the Defendant would ordinarily be given significant deference in its interpretation of the treaty, that deference is lost when (i) no evidence exists that its interpretation accords with the views of its French counterparts and (ii) its interpretation runs contrary to the treaty's very purpose of avoiding double taxation of income. In these circumstances, no deference whatsoever should be accorded to the Defendant's treaty interpretation in this case.

2. Defendant's Interpretation Undermines the Structure of the French Treaty and Renders Moot a Series of Interrelated Treaty Provisions

The interpretation of any article in the French Treaty necessarily requires consideration of the treaty as a whole. Article 1 states that, except as otherwise provided, the French Treaty applies only to persons who are residents of the United States or France. Article 4 defines the term "resident" and, in the context here of a U.S. citizen taxpayer who is French tax resident, Article 4(3)(a) and (b) confirm that Plaintiffs are French tax residents for purposes of the French Treaty. However, the so-called "saving clause" contained in Article 29(2) also applies to Plaintiffs as, although they are French residents under the terms of the French Treaty,

"[n]otwithstanding any provision of the Convention, except the provisions of paragraph 3, the United States may tax * * * its citizens as if the Convention had not come into effect." The effect of a tax treaty's saving clause is to nullify the application of the treaty for a U.S. citizen, other than for articles specifically excluded from the terms of the saving clause. *See*, *e.g.*, *Filler v. Comm'r*, 74 T.C. 406, 409-410 (1980).[14]

Article 29(3) of the French Treaty, however, allows U.S. citizens and residents certain benefits of the French Treaty notwithstanding the saving clause. Article 29(3) states that the saving clause "shall not affect: (a) the benefits conferred * * * under Article 24 (Relief From Double Taxation) * * *." The purpose of this carve out is to prevent the saving clause "from applying where it would contravene provisions of the Convention that are intended to extend U.S. benefits to U.S. citizens and residents."[15]

The obvious question follows: why would there be an elaborate set of provisions in the French Treaty entitling a U.S. citizen to claim a foreign tax credit if the only basis for a taxpayer to claim a foreign tax credit is contained in U.S. domestic provisions contained in the Code? If it had been the shared expectations of the treaty partners that only the terms of Code would

---

[14]     Treaties are based upon reciprocity: one country may relinquish the right to tax certain income on which it would ordinarily exercise taxing rights (*e.g.*, the United States relinquishes taxation rights over U.S. source interest received by a French resident) in exchange for its counterparty's agreement not to tax identical income (*e.g.*, France relinquishes taxing rights over French source interest received by a U.S. resident). Because the French do not assert taxing rights over French citizens living in the United States as a matter of French domestic law, the United States has no reciprocal obligation to relinquish taxing rights over U.S. citizens living in France. *Filler,* 74 T.C. at 410.

[15]     *See* Article 1 – Personal Scope, Treasury Department Technical Explanation of the Convention between the Government of the United States of American and the Government of the French Republic for the Avoidance of Double Taxation and the prevention of Fiscal Evasion with respect to taxes on Income and Capital signed at Paris on August 31, 1994 (the "Technical Explanation").

determine entitlement to foreign tax credits, then simply not having Article 24(2)(a) at all or having it be subject to the provisions of the saving clause would have achieved that result. Instead, the Defendant's reading of the treaty entails an elaborate charade according to which:

1) Article 29(2) denies a U.S. citizen any rights other than those contained under domestic law by operation of the saving clause;

2) A carve out to the saving clause would apply under Article 29(3) offering the U.S. citizen the ability to claim a foreign tax credit under Article 24(2)(a); and

3) The wording of Article 24(2)(a) would restrict foreign tax credit relief to that allowed under U.S. domestic law.

This convoluted route would have the effect of rendering numerous French Treaty provisions meaningless, with no purpose or effect, which is a fundamentally untenable proposition. *See United States v. Butler*, 297 U.S. 1, 65 (1936) ("words cannot be meaningless, else they would not have been used").

Indeed, it is hard to understand what the Defendant contends is the purpose of Article 24(2)(a). If the article simply provides that domestic law governs the allowance of a foreign tax credit, the article has no independent effect. A more logical reading of the words of Article 24(2)(a) is that a foreign tax credit is allowed "in accordance with the provisions and subject to the limitations of the law of the United States" (*i.e.*, based on the Code) but the subsequent parenthetical phrase "as it may be amended from time to time without changing the general principle thereof" ensures that that any French income tax covered by the French Treaty may be credited against U.S. income taxes that come within the treaty's scope. The amount of the credit is indeed determined based on the provisions and limitations of the Code, but the general principle allowing a credit of French income taxes against U.S. income taxes to avoid double

taxation is guaranteed.  In the context of the French Treaty, as discussed in more detail below,

that essential and meaningful parenthetical phrase offers Plaintiffs the relief sought here – a

foreign tax credit applied against a U.S. income tax that did not exist at the time the French

Treaty was ratified.

> 3.      Denying a Foreign Tax Credit Based on the Enactment of a New U.S.
> Income Tax Does Not Comport with the General Treaty Principle that a
> Foreign Tax Credit is Allowed Against a U.S. Income Tax

As indicated above, the NIIT qualifies as a U.S. income tax under the French Treaty.  The

question therefore arises as to the interplay between a "United States income tax" covered by

Article 2(2) of the French Treaty and the provisions of its Article 24, entitled "Relief From

Double Taxation."

The "general principle" referred to in Article 24(2)(a) is that a credit is allowed for

French income taxes against U.S. income taxes.  The passage into law of a new "United States

income tax" cannot be said to have any bearing under the treaty on whether an amount of French

tax paid is a foreign income tax that is creditable *per se;* the Plaintiffs' French income taxes

equal to $140,398 remain eligible for a foreign tax credit against their substantive U.S. tax

liability.  Nor does a new "United States income tax" alter the amount of the Code Section 904

limitation – Plaintiffs did not, and could not, argue that French income taxes are creditable

against, for example, U.S. source income.  Instead, the Defendant has concluded in its Treasury

Decision, without any explanation, that by virtue of the limitations of "U.S. law" and in

particular, relying on Code Sections 27(a) and 901, a credit is not allowed against the NIIT.

Code Section 901(a) says nothing of the sort.  It states that "the tax imposed by this

chapter [Chapter 1] shall, subject to the limitation of section 904, be credited with the amounts

provided in the applicable paragraph of subsection (b)."  The Technical Explanation provides the

rationale of the language used by Article 24(2)(a): "[t]he credits provided under the Convention are allowed in accordance with the provisions and subject to the limitations of U.S. law, as that law may be amended over time, so long as the general principle of this Article, *i.e.*, **the allowance of a credit**, is retained."  (Emphasis added.)[16]  This Technical Explanation then provides that "the terms of the credit are determined by the provisions of the U.S. statutory credit at the time the credit is given.  The limitation of law generally limits the credit against **U.S. tax to the amount of U.S. tax due** with respect to net foreign source income within the relevant foreign tax credit limitation category (see Code Section 904(a))."  (Emphasis added.) "Limitations" refers to Section 904 principles regarding the amount of the foreign tax credit and not something broader.

Would it be the shared expectation of the treaty partners that a subsequently enacted "United States income tax" could be offset by a credit for French income taxes (Code Sec. 901) provided the limitation requirements in Code Section 904 are met?  This is axiomatic – of course it would.  Enactment of the NIIT in 2010 is precisely the type of amendment contemplated by the provisions of Article 2(2) and the essential and meaningful parenthetical text of Article 24(2)(a) ensures that the general principle – that a credit is allowed for a subsequently enacted U.S. income tax – is guaranteed.  Ignoring this clear language, the Defendant argues without explanation that Code Sections 27(a) and 901 create a limitation that sweeps in a prohibition on

---

[16]   This accords with the Treasury Department Explanation of the Model Income Tax Convention – 2006, which provides "[t]he credits allowed under paragraph 2 are allowed in accordance with the provisions and subject to the limitations of U.S. law as that law may be amended from time to time, as long as the general principle of this Article, that is, the allowance of a credit is retained. * * * [T]he U.S. credit under the Convention is subject to the various limitations of U.S. law (see, *e.g.*, Code section 901-908).  For example, the credit against U.S. tax generally is limited to the amount of U.S. tax due with respect to net foreign source income within the relevant foreign tax credit limitation category (see Code section 904(a) and (d) * * *."

crediting any French taxes against any subsequently enacted U.S. income tax that is not found in Chapter 1.  Such an extreme reading of the French Treaty without any regard to principles of treaty interpretation is really no more than simply the Defendant's "say-so".  *See Eshel v. Comm'r*, 831 F.3d at 517.[17]

The Defendant's denial of a foreign tax credit offends the principle established by the U.S. Court of Appeals for the Federal Circuit in *Xerox* that a treaty and domestic rules should be harmonized to the greatest extent possible in accordance with the overall purpose of the treaty.[18] *Xerox*, 41 F.3d at 652.  The French Treaty is designed to function, in accordance with its title, "for the avoidance of double taxation."  While U.S. domestic credit rules do not provide for such a foreign tax credit against NIIT liability, U.S. domestic rules also do not explicitly prohibit it. The French Treaty and the domestic rules are harmonized when they allow for a credit for a subsequently enacted U.S. income tax (the NIIT), but only for those taxpayers eligible for the benefits of the French Treaty.

---

[17]     The oft-cited Lewis Carroll quote seems particularly apt here:

"When I use a word,' Humpty Dumpty said in rather a scornful tone, 'it means just what I choose it to mean — neither more nor less.'

'The question is,' said Alice, 'whether you can make words mean so many different things.'

'The question is,' said Humpty Dumpty, 'which is to be master — that's all."

Lewis Carroll, *Through the Looking Glass*, in *The Complete Works of Lewis Carroll*, 214 (First Modern Library ed. 1936).  *See, e.g.*, *TVA v. Hill*, 437 U.S. 153, 173 fn. 18; *Zschernig v. Miller*, 389 U.S. 429, 435 fn.6 (1968).

[18]     Code Sec. 6511(d)(3) further envisages that a treaty-based foreign tax credit would be allowed.  This section allows for an expanded 10-year statute of limitations for refund claims rather than the normal three-year limitations period and covers refunds in accordance with "section 901 or the provisions of any treaty in which the United States is a party."

4.   Relevant Precedents Interpreting the Provisions of Article 24(2)(a)
Confirm that a Foreign Tax Credit is Allowed Under the Terms of
the French Treaty.

Federal courts have already had the opportunity to consider the meaning of the Article

24(2)(a) phrase "as it may be amended from time to time without changing the general principle

thereof". In 1986, the Code was amended such that a taxpayer could only claim a foreign tax

credit against 90 percent of his or her alternative minimum tax (AMT) obligation.[19] Thus, even

if a taxpayer incurred foreign tax sufficient to offset 100 percent of his or her AMT liability,

Code Section 59(a) expressly limited foreign tax credits such that a taxpayer would be required

to pay no less than 10 percent of this U.S. tax liability.

In *Haver v. Comm'r*, 444 F.3d 656 (D.C. Cir. 2006), the taxpayer argued that the AMT

limitation violated the terms of a tax treaty between the United States and Germany. The

operative provision of the German treaty was substantially identical to the French Treaty. The

Court held that as the AMT limitation was enacted in 1986 and the German Treaty was ratified

in 1991, the Code Section 59(a) limitation on creditability of German tax was implicitly agreed

by the two treaty partners. The Court wrote:

> [The taxpayer] argues that the Government's position would allow the United States to
> deny the foreign tax credit to an unlimited extent, and thus effectively eviscerate the
> benefits of [the equivalent of Article 24(2)(a) of the French Treaty]. Whether or not a
> more substantial [AMT] would conflict with the Treaty is a question we need not answer
> here. As we have explained, [the AMT] was in place when the [German] Treaty was
> adopted, so the parties to the Treaty had reason to know that the United States surely
> would impose a 10% minimum tax. Therefore, it is unnecessary for us to decide what
> more might have been contemplated by the provision in [the equivalent of Article 24(1)]
> that conditions the tax credit limitations of U.S. law 'as it may be amended from time to
> time without changing the general principles' of the Treaty."

---

[19]   Code Sec. 59(a). This limitation was repealed in 2004. American Jobs Creation Act of
2004, Pub. L. 108-357, Sec. 421(a)(1).

*Id.* at 660.  In so holding, the Court distinguished between limitations that existed at the time the treaty was ratified and after-enacted provisions that required consideration of the general principle that a foreign tax credit shall be allowed.

Congress has explicitly recognized that the "as it may be amended from time to time without changing the general principle thereof" language expands foreign tax credit relief and that inconsistent treaty provisions must be explicitly overridden.  In 1988, Congress enacted a provision stating the 90 percent foreign tax credit limitation "shall apply notwithstanding any treaty obligation of the United States in effect on the date of enactment of the [1986 law change]."  *See* Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, Sec. 1012(aa)(2).[20]  Courts have pointed to this Congressional override to explain why for treaties ratified before the 90 percent AMT limitation applied, the "as many be amended from time to time without changing the general principle" language did not allow for a foreign tax credit.  *E.g.*, *Jamieson v. Comm'r*, 584 F.3d 1074, 1076 (D.C. Cir. 2009); *Kappus v. Comm'r*, 337 F.3d 1053, 1058 (D.C. Cir. 2003).

As this Congressional policy regarding treaty override was already in place at the time of the ratification of the French Treaty, the treaty partners' shared expectations would naturally be

---

[20]     A U.S. treaty obligation has the same weight as a statute, *Missouri v. Holland*, 252 U.S. 416 (1920), and the Code specifically acknowledges this point.  *See* Code Sec. 7852(d).  Treaty override, where Congress abrogates or modifies a treaty result, however, "is not to be lightly imputed to Congress."  *Am. Air Liquide, Inc. & Subs. v. Comm'r*, 116 T.C. 23, 29 (2001); *Cook v. United States*, 288 U.S. 102, 120 (1933) ("A treaty will not be deemed to have been abrogated or modified by a later statute, unless such purpose on the part of Congress has been clearly expressed.").  Here, the Treasury Decision recognizes that Congressional override of U.S. tax treaty obligations was not intended stating "[a]n analysis of each United States income tax treaty would be required to determine whether the United States would have an obligation under that treaty to provide a credit against the section 1411 tax for foreign income taxes paid to the other country."

that Congressional override would be required to prevent French income taxes from being creditable against a newly enacted U.S. income tax.  The clear inference is that where a Congressional override is not present, the parenthetical language of Article 24(2)(a) would provide for a foreign tax credit to be extended to the newly adopted tax.

It follows that Article 24(2)(a) provides for a foreign tax credit for the NIIT.  To restrict the terms of Article 24(2)(a) to the Code's foreign tax credit provisions suffers from a number of fatal flaws:

1) It is contrary to the principal purpose of the French Treaty: to avoid double taxation;

2) It renders moot detailed provisions in: (a) the saving clause, (b) the carve out to the saving clause and (c) the Article 24(2)(a) language "as many be amended from time to time without changing the general principle";

3) It violates fundamental treaty interpretation rules by not harmonizing domestic legislation with treaty provisions to give full effect to the treaty; and

4) It ignores that Congress has established a policy of treaty entitlement to foreign tax credits unless after-enacted domestic law provisions explicitly override such treaty entitlement.

The Defendant's approach to treaty interpretation in this case suffers from the same flaws as in *Eshel v. Comm'r*, *supra* where the Court of Appeals faced conclusory statements regarding the French Treaty offered by the Defendant and chastised the Defendant on the basis that its "extreme reading * * * rests on nothing more than the Commissioner's own say-so.  It lacks any grounding in the Agreement's text or in any principle governing the interpretation of international agreements."  By contrast, Plaintiffs' interpretation offers a consistent, rational interpretation of the French Treaty, that (1) accords with its purpose of avoiding the evils of

double taxation, (2) takes account of the saving clause, (3) harmonizes domestic legislation and the provisions of the treaty and (4) recognizes the absence of a treaty override.

### B.   Article 24(2)(b) Provides an Independent Basis for a Foreign Tax Credit

Article 24(2) of the French Treaty contains five separate subparagraphs and the language of Article 24(2)(a), quoted above, states that a foreign tax credit is allowed "[i]n accordance with the provisions and subject to the limitation of the law of the United States (as it may be amended from time to time without changing the general principle hereof) * * *."  Article 24(2)(b), however, is not subject to the foregoing Article 24(2)(a) limitations and states instead that:

> In the case of an individual who is both a resident of France and a citizen of the United States:  (i) the United States shall allow as a credit against the United States income tax the French income tax paid after the credit referred to in subparagraph (a)(iii) of paragraph 1.   However, the credit allowed against United States income tax shall not reduce the portion of the United States income tax that is creditable against French income tax in accordance with subparagraph (a)(iii) of paragraph 1.

This Article 24(2)(b) provision also allows a foreign tax credit for the NIIT.

Article 24(2)(b) neither contains nor refers to the Article 24(2)(a) limitations.  Article 24(2)(b) applies to U.S. citizens living in France, such as Plaintiffs, and allows as a credit against U.S. income tax, which by definition includes the NIIT, any French income taxes "after the credit referred to in subparagraph (a)(iii) of paragraph 1."[21]  In Plaintiffs' case, the Article

---

[21]      Article 24(1)(a)(iii) allows the United States primary taxing rights on certain U.S. source income arising to a French resident (whether a U.S. citizen or not), such as a 15 percent tax on a dividend paid by a U.S. resident corporation to a French resident individual.  *See* Article 10(2)(b).  In the case of a dividend from a U.S. corporation to a U.S. citizen living in France, this reference to subparagraph (1)(a)(iii) allows the United States retains primary taxing rights on the first 15 percent of such dividend but allows a foreign tax credit against United States income tax that exceeds 15 percent.  In the case at bar, the Plaintiffs did not incur any French income tax on any U.S. source income and have not sought a foreign tax credit based upon the French Treaty for any Chapter 1 tax or NIIT on such U.S. source income.

24(1)(a)(iii) credit is zero as Plaintiffs did not incur French tax on any U.S. source income.

Accordingly, the language of Article 24(2)(b) provides that a foreign tax credit is allowed.

The *Toulouse* case supports this decision.  There, the Tax Court noted that the petitioner

waived any arguments other than for a credit under Article 24(2)(a).  *See*, fn. 10 *supra.*  The Tax

Court then stated:

> Petitioner questions the purpose of the [French Treaty and a substantially identically
> worded tax treaty with Italy] if there is no independent, treaty-based credit and a credit is
> allowable only if it is provided in the Code.  But we do not so hold.  Other provisions of
> the [French Treaty and Italian tax treaty] may well provide for credits that are
> unavailable under the Code.

The French Treaty is a finite document and the only section allowing for a foreign tax credit is

contained in Article 24.  The only two subparagraphs of Article 24 that could possibly apply to

U.S. citizens resident in France (like the petitioner in *Toulouse* or Plaintiffs here) are Articles

24(2)(a) and (b).[22]  The Tax Court, by referring to a possible other credit provision that would be

available, appears to agree that a plain reading of Article 24(2)(b) would provide for a foreign

tax credit even if the restrictions of Article 24(2)(a) would otherwise apply.

In the AMT cases cited above, the *Kappus* Court considered the argument whether

Article 24(2)(b) type language in the tax treaty between the United States and Canada would

offer an independent basis for a foreign tax credit outside the Article 24(a)(1) type of provision.

The applicable Canada Treaty language, quoted by the *Kappus* Court, was as follows:

> Article XXIV of that treaty, entitled "Elimination of Double Taxation," reads in relevant
> part:

---

[22]     Article 24(2) has five subparagraphs.  In addition to subparagraphs (a) and (b) discussed
herein, subparagraph (c) deals with U.S. resident French nationals receiving French salary and
pensions, subparagraph (d) deals with partnership income and subparagraph (e) defines the
French taxes that are creditable (to ensure that the definition in Article 24 accords with the
Article 2 Taxes Covered definition).

1. In the case of the United States, subject to the provisions of paragraphs 4, 5, and 6, double taxation shall be avoided as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States ... as a credit against the United States tax on income the appropriate amount of income tax paid or accrued to Canada.....

4. Where a United States citizen is a resident of Canada, the following rules shall apply:

(a) Canada shall allow a deduction from the Canadian tax in respect of income tax paid or accrued to the United States in respect of profits, income or gains which arise ... in the United States, except that such deduction need not exceed the amount of the tax that would be paid to the United States if the resident were not a United States citizen; and

(b) for the purposes of computing the United States tax, the United States shall allow as a credit against United States tax the income tax paid or accrued to Canada after the deduction referred to in subparagraph (a). The credit so allowed shall not reduce that portion of the United States tax that is deductible from Canadian tax in accordance with subparagraph (a).

The United States argued in *Kappus* that paragraph 4 cited above "does not impose a substantive obligation on the part of the United States to grant a tax credit, but rather 'merely provides rules for determining the order in which deductions or credits for taxes paid to the other jurisdiction are applied when the same income is subject to tax by both.'" *Kappus* 337 F.3d at 1056. The *Kappus* Court was unconvinced of the Defendant's argument, holding that "[t]he question of whether the [Canada Treaty] and statute can be harmonized as the government suggests is an extremely close one.  It is not, however, a question that we need to resolve." *Id*.  The *Kappus* Court ultimately held in favor of the government based upon the AMT treaty override provisions quoted above.

In stark contrast to the AMT situation, Congress did not legislate treaty override with respect to the NIIT.  The language used in Article 24(2)(b) does not allow for any qualification contained in Article 24(2)(a) – there is no cross-reference whatsoever.  Instead, without any reference to the "[i]n accordance with the provisions and subject to the limitations of the law of

- 26 -

the United States" Article 24(2)(a) language, Article 24(2)(b) allows a U.S. citizen living in France a credit for French taxes paid against that U.S. citizen's U.S. income tax liability.  This plain language cannot be read in a different way and allows Plaintiffs also to claim a foreign tax credit against their NIIT under the terms of Article 24(2)(b) of the French Treaty.

## III.  <u>Conclusion</u>

In summary, both the language and logic of Article 24(2)(a) and 24(2)(b) of the French Treaty provide for a foreign tax credit against the NIIT for U.S. taxpayers resident in France, even though such a foreign tax credit would not be allowed under domestic law.  To conclude otherwise would mean that these treaty provisions have no effect and would be contrary to the purpose of the French Treaty – to avoid double taxation.

For the reasons set forth above, Plaintiffs request judgment in the amount of $3,851.00, plus interest and costs allowed by law, and such other relief as the Court may deem just and appropriate.

Respectfully submitted,

/s/ Stuart E. Horwich

Horwich Law LLP
20 Old Bailey, 5th Floor
London  EC4M 7AD
United Kingdom
011 44 20 8057 8013
seh@horwichlaw.com
Counsel for Plaintiffs