1          IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2

3    MATTHEW CHRISTENSEN, et al.,     )

4            Plaintiffs,             )

5     vs.                            )  Case No. 20-935T

6    UNITED STATES OF AMERICA,        )

7            Defendant.              )

8

9

10

11         United States Court of Federal Claims

12            717 Madison Place, N.W.

13              Washington, D.C.

14          Wednesday, June 22, 2022

15               11:00 a.m.

16            ORAL ARGUMENT

17

18

19       BEFORE THE HONORABLE MARIAN BLANK HORN

20

21

22

23

24

25  Susanne Bergling, RMR-CRR-CLR, Court Reporter

Matthew Christensen, et al. v. USA                    6/22/2022

```
 1    APPEARANCES:

 2

 3    ON BEHALF OF THE PLAINTIFF:

 4            STUART E. HORWICH, ESQ.

 5            Horwich Law LLP

 6            7 Hatton Garden

 7            London 3C1N 8AD

 8            London, England

 9            44 20 7092 6830

10            seh@horwichlaw.com

11

12

13    ON BEHALF OF THE DEFENDANT:

14            JASON BERGMANN, ESQ.

15            U.S. Department of Justice

16            P.O. Box 26

17            Washington, D.C.  20044

18            (202) 616-3425

19            jason.bergmann@usdoj.gov

20

21    ALSO PRESENT:

22            Alan Williams, IRS

23

24

25
```

3

Matthew Christensen, et al. v. USA                    6/22/2022

```
 1                    I N D E X

 2

 3    ARGUMENT                                    PAGE

 4      MR. HORWICH                             6, 70

 5      MR. BERGMANN                               27

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Matthew Christensen, et al. v. USA                          6/22/2022

```
 1                 P R O C E E D I N G S
 2                 -    -    -    -    -
 3        (Proceeding called to order, 11:02 a.m.)
 4        THE COURT:  All right.  The case on the docket
 5   is -- and I'm not sure if I'm pronouncing the name
 6   properly -- Matthew and Katherine Kaess Christensen,
 7   Docket Number 20-935T.  This is the oral argument after
 8   submissions of motions and cross motions for summary
 9   judgment, and we will proceed.
10        I'd ask you, please, Counsel, to introduce
11   yourselves, and then I'll make a couple of comments and
12   requests, and we'll go from there, but let's start with
13   the Plaintiff.
14        MR. HORWICH:  Good morning, Your Honor.  My name
15   is Stuart Horwich.  I represent the Plaintiffs in this
16   matter.
17        THE COURT:  I can tell you right now you are
18   going to have to talk louder.  We do have a number of
19   people in the audience, including my law clerks, my
20   interns, and other interns or clerks from other offices,
21   and I do want them to have the experience of hearing two
22   expert attorneys presenting.  So keep your voices up.
23        All right.  For the Defendant?
24        MR. BERGMANN:  Yes.  My name is Jason Bergmann
25   from the Tax Division of the Department of Justice for
```

Matthew Christensen, et al. v. USA                    6/22/2022

```
 1    the United States.
 2              THE COURT:  Very good.  Thank you.
 3              All right, a couple of things.  No abbreviations,
 4    please.  You-all live in this world.  I don't
 5    constantly, although I have lived in it for a while
 6    since being on the Court, so let's talk in full
 7    sentences and not the tax practice acronyms that you-all
 8    use every day but I do not.
 9              And also I want to be sure that you clearly
10    outline the characteristics of your Plaintiffs,
11    particularly with respect to how they would fit into the
12    arguments on the Tax Treaty, and the first thing I would
13    like you to start with, Mr. Horwich, is let's talk
14    about -- well, actually, I would like to start with
15    Mr. Bergmann on the issue of whether the claim was
16    timely or not, and let's get that out of the way.
17              MR. BERGMANN:  Yes, Your Honor.  The claim was
18    timely.
19              THE COURT:  Okay.  That's what I expected to be a
20    brief answer, but I needed to make sure.
21              MR. BERGMANN:  Yes.  I can elaborate if you would
22    like, but I think the claim is timely is probably
23    sufficient.
24              THE COURT:  And what's -- give me the basis that
25    the -- because obviously at one point there was an
```

Matthew Christensen, et al. v. USA                    6/22/2022

 1   assertion of untimeliness.

 2          MR. BERGMANN:  Yes.  Claims based upon foreign

 3   tax credits have an extended statute of limitations that

 4   is different from other refund claims under the Code.

 5          THE COURT:  Right, and that's what I've seen.

 6   That would have been probably a loss for you had that

 7   been maintained, but I think that's the right answer.

 8          MR. BERGMANN:  Oh, yes.  Yes, Your Honor.

 9          THE COURT:  All right, thank you.

10          All right.  Mr. Horwich, we turn to you, and why

11   don't we start with your argument.  If you want to do it

12   from the table, you can, or you can come to the podium,

13   whichever you're more comfortable with.

14          MR. HORWICH:  I think I will come to the podium.

15          THE COURT:  That's fine.

16          MR. HORWICH:  And I will try to shout.

17          I do want to thank the Court and especially

18   Mr. Bergmann.  I have had a couple of personal issues,

19   COVID and otherwise, and it was very good to have that

20   sorted without any problems, especially Mr. Bergmann

21   telling me within 30 seconds of getting emails that it

22   was all okay.

23          THE COURT:  And you do have to keep your voice up

24   higher, because even I am having some trouble hearing

25   you.

Matthew Christensen, et al. v. USA                           6/22/2022

1          MR. HORWICH:  Sorry.

2          Okay, this is a tax case.  In fact, it's a treaty

3   interpretation case.

4          THE COURT:  All right.  Let me stop you for a

5   second.

6          Can you-all hear?  No problem?  Okay, good.  At

7   this volume, we can.  Otherwise, we can try to get him

8   to turn up the volume if that's going to assist, but go

9   ahead.

10          MR. HORWICH:  Okay, sorry.

11          So this is a treaty interpretation case.  The

12   question involved here is whether or not the taxpayers,

13   the Plaintiffs, are entitled to a treaty-based foreign

14   tax credit for the net investment income tax.

15          The question here starts off with Article 24 of

16   the treaty, and that article, it is the Plaintiffs'

17   contention, is broader than the Internal Revenue Code,

18   and that's in some respects quite easy to see in that in

19   parallel circumstances, such as the Danish hydrocarbon

20   tax -- which is the easiest one to say, but there are

21   numerous other ones -- the concept of what is a tax is

22   broader than what you would find in the Code.

23          And as a parallel, the concept of what is a

24   United States income tax is not merely a tax that is

25   what we think of as an ordinary income tax that falls

Matthew Christensen, et al. v. USA                                    6/22/2022

1    within Chapter 1 of the Code.  It includes the Chapter

2    2(a) provision of the Code; that is, the net investment

3    income tax or the Obamacare -- and I will try not to say

4    NIIT --

5            Well, you don't have to say Obamacare either.

6    You could say the NIIT, which is what it is.  That's --

7    Obamacare is an acronym.  We are going to avoid acronyms

8    in general.

9            MR. HORWICH:  So I will say NIIT.

10           THE COURT:  That's good.

11           MR. HORWICH:  Okay.  So let's take what is sort

12   of an example and the example hopefully will highlight

13   the Plaintiffs' position in this case.

14           Let us assume, as a very straightforward and

15   simple example, that the Plaintiffs in this case had

16   only one source of income.  It was a capital gain.  Let

17   us further assume that the --

18           THE COURT:  When you say "let us take an

19   example," are you taking this example of the Plaintiffs?

20   Don't give me a different example.  Give me the example

21   of this case.  Let's not confuse things.

22           MR. HORWICH:  Okay.  So in this case the

23   Plaintiffs had a number of different types of income.

24   They had salary income, the conventional description of

25   earned income.  That is not -- the credits on that

1     earned income are not subject to dispute.

2            They had an amount of investment income.  That

3     investment income can be categorized into two separate

4     pieces, investment income arising out of their

5     investments in the United States -- what we tax lawyers

6     would refer to as United States source income -- and

7     they also had investment income from the sale of some

8     shares and a little bit of French source interest

9     income.

10            That income, if we are following the language of

11     the treaty, the French source investment income was

12     subject to French tax as defined in the treaty.  The

13     French tax was subject to a 30 percent rate.  That is

14     the normal rate for tax on that French income.

15            The question then comes to is we know that there

16     was United States tax on that income.  That United

17     States tax on that income was approximately 20 percent.

18     In addition --

19            THE COURT:  Let me stop you for a minute.  You're

20     talking about the French income, that it was a U.S.

21     rate, or what are you saying?

22            MR. HORWICH:  Okay, sorry.

23            THE COURT:  You have kind of melded the two

24     concepts.

25            MR. HORWICH:  The French -- the tax on the French

Matthew Christensen, et al. v. USA                          6/22/2022

1    investment income, the Chapter 1 normal income tax on

2    that income was approximately 20 percent.

3              THE COURT:  Right.

4              MR. HORWICH:  In addition, there was NIIT applied

5    of 3.8 percent.  Both the ordinary income tax and the

6    NIIT would meet the definition in the treaty of United

7    States income tax.  That is something that I believe the

8    parties both agree.

9              The question then is whether or not, under the

10   terms of the treaty, the Plaintiffs can claim a tax

11   credit which would eliminate the entire amount of U.S.

12   ordinary tax and NIIT on that income.  This turns on the

13   wording of the French treaty.

14             The French treaty wording says that it has to be

15   in accordance with the provisions and subject to the

16   limitations of U.S. law and, crucially, it goes on to

17   say "as amended from time to time without changing the

18   general principles thereof."

19             When one thinks of provisions, we are not

20   thinking about whether this was a French tax that's

21   defined in the treaty.  We are thinking about things

22   such as is there something that we need to know about

23   that would cause us to disallow that credit?

24             Those things could be did the taxpayer meet the

25   holding period -- the Plaintiffs, sorry -- meet the

Matthew Christensen, et al. v. USA                          6/22/2022

1    holding period?  Was the tax used as a subsidy?  Did the
2    United States and France fall out over something else
3    and sever diplomatic relations?  There are a number of
4    different ones.  I could go on for quite a long time
5    about various exceptions that could cause a
6    disallowance.
7           The second thing one thinks about is are there
8    limitations.  Limitations will limit the amount of the
9    credit.  So, for instance, because we are confining
10   ourselves to only French source income, we don't need to
11   worry about whether or not there was U.S. source income.
12   You certainly could not credit the French tax against
13   U.S. source income.  This is something the Plaintiffs
14   are certainly not trying to do.
15          So we get through that, we still have this 30
16   percent of tax credits, and what we want to do is we
17   want to claim those against the United States income
18   tax, which includes the NIIT, and there we get to the
19   parenthetical, the crucial parenthetical, which says
20   that we are allowed to claim this in accordance with
21   U.S. law and subject to the limitations "as amended from
22   time to time without changing the general principles
23   thereof."
24          What do we mean by "general principles thereof"?
25   The Treasury explanation is quite clear, and, indeed,

Matthew Christensen, et al. v. USA                                    6/22/2022

1    the grammar is clear, too.  The "principles thereof" is

2    that you get a credit.  You get a credit of French tax

3    of 30 percent against United States income tax, which is

4    the ordinary income tax, the Chapter 1, plus the NIIT.

5    That is the Plaintiffs' case in this matter.

6         Now, clearly there is a disagreement on this, and

7    starting with the one court that dealt with this a few

8    months ago, the Toulouse court and the Tax Court, the

9    Toulouse court did not say that the "amended from time

10   to time without changing the general principles thereof"

11   focused on a credit.  They said -- the Court said it

12   focused on the general -- the United States tax laws.

13   It didn't refer to a credit.  That was wrong.  Simple,

14   got it wrong.

15        So what do we do --

16        THE COURT:  Well, let me stop you here for a

17   moment.  I think we all agree on the answer to this, but

18   I would like to hear it from both of you.  Toulouse is

19   basically the only outstanding precedent that you've

20   sort of relied on in terms of a case that's dealt with

21   something similar.  You've called this a case of first

22   impression, and, of course, it's about very little

23   money, so are there other cases that you feel either go

24   for or against you?

25        But you've characterized it kind of with Toulouse

Matthew Christensen, et al. v. USA                          6/22/2022

1   in the background and a case of first impression.  So do
2   you want to comment further on that, please?
3           MR. HORWICH:  This case will have wide-ranging
4   impact.
5           THE COURT:  Right.
6           MR. HORWICH:  I am not aware of any other cases
7   pending in any court that would deal with this, and, in
8   fact, the way that this would come up procedurally, it
9   would be challenging -- is perhaps the right way -- for
10  it to be in any other court besides this one.
11          THE COURT:  What about in the past?  Have there
12  been comments on this -- the treaty's been around for a
13  while, amended from time to time, with some -- I mean,
14  are there other previous cases, other than Toulouse --
15          MR. HORWICH:  Dealing with the NIIT and treaties,
16  no.
17          THE COURT:  No, okay.  So, clearly, that's why
18  you've characterized it as a case of first impression.
19  Is that correct?
20          MR. HORWICH:  First impression in this Court, and
21  it was -- and the only other case I'm aware of was the
22  Toulouse case that came out, gosh, ten years ago.
23          THE COURT:  Well, they kind of qualified their
24  result, too, a little bit there, but --
25          MR. HORWICH:  I'm aware.

Matthew Christensen, et al. v. USA                    6/22/2022

1          THE COURT:  Yeah.

2          MR. HORWICH:  But I don't want to mince words.  I

3     think that the statement that -- the Court simply got it

4     wrong, and it got it wrong for that reason.  I think it

5     also got it wrong because it did not consider that, in

6     fact, the concept of what is in Toulouse both a French

7     tax and an Italian tax is wider than the concept of what

8     is a creditable tax under U.S. tax principles.

9          Indeed, it's difficult to understand, given that

10    the Italian tax, the IRAP in Italy, has specifically

11    defined noncreditable tax that has a tax defini -- that

12    is still allowed as a credit, the Court glossed over it.

13    So that side of it definitely, we believe, was error.

14         In terms of where we go from here, so I have a

15    situation where we have a French tax.  It gets through

16    the provisions and limitations to not -- to still be

17    available.  It is more than the amount of U.S. income

18    tax and NIIT, and, therefore, we expect a credit.

19         We do have to interpret this treaty, and the

20    language that I've done, the reason we interpret it this

21    way, we have standard treaty interpretation.  Standard

22    treaty interpretation starts with what is the shared

23    expectations of the treaty partners.  I know the

24    Government takes a bit of issue with this; however, you

25    would have -- you can't read a Supreme Court case that

Matthew Christensen, et al. v. USA                          6/22/2022

```
 1      says anything other than that.

 2             Where the Government says that they're only aware

 3      of one case from the Supreme Court in the last 50 years,

 4      the response to that would be, well, how many Supreme

 5      Court cases go the other way, please?  And the answer is

 6      zero.

 7             If you go look at Court of Appeals cases in the

 8      Tax area, every single one of them will tell you that

 9      shared expectation is the standard.  Indeed, in the case

10      which I chased for nine years, Eshel, the Government's

11      interpretation standard was described as the equivalent

12      of clapping with one hand.  You have to look at what the

13      parties -- the treaty parties would expect.  That's one

14      statement.

15             The next statement is that you have to be -- when

16      you have two interpretations, a narrow one and a liberal

17      one, you go with the liberal one.  Again, there's

18      Supreme Court case law on point.  Again, the Government

19      takes issue with that.  Where the Government takes issue

20      with that, it says this is the sovereign -- I'm trying

21      to describe this -- this is -- the sovereign rights of

22      taxation are paramount, and they should be strictly

23      construed.

24             Well, actually, a tax treaty is a discussion

25      between two sovereigns, and it's a trade-off.  You get
```

```
 1   to tax stuff that maybe I should have gone first, and I
 2   get to tax stuff that maybe you should have gone first,
 3   creates less friction, is better for business, better --
 4   might be easier for us to administer, and that's why we
 5   have a tax treaty.
 6          THE COURT:  Let me stop you for a moment.  It is
 7   pretty common for the United States, when defending
 8   cases, to take a narrow interpretation view of many
 9   different areas on the sovereign immunity principle.
10   Why is that different here?
11          MR. HORWICH:  The purpose of the -- we'd have to
12   go back a step.  Back a step is what is the shared
13   expectations of the parties, the treaty parties.  In
14   other words, the United States on the one side, France
15   on the other.  The shared expectation is the starting
16   point of that analysis.  Taking a narrow view defeats
17   the starting point of why they entered into the treaty.
18   They entered into the treaty -- it says on its face they
19   entered into the treaty in order to avoid double
20   taxation.
21          THE COURT:  So it's not really a narrow view.
22   You're looking back -- or a liberal view.  You're
23   looking back at the words of the treaty.
24          MR. HORWICH:  I'm looking at the words of the
25   treaty, and I am interpreting them in order to fulfill
```

Matthew Christensen, et al. v. USA                        6/22/2022

1    its purpose and --

2            THE COURT:  So it's not that I would have to come

3    down with you the path of saying it's a liberal

4    interpretation.  It could -- the result could come just

5    from the fact that there's treaty language setting the

6    expectation, or are the two inconsistent?

7            MR. HORWICH:  No, they are not inconsistent.  In

8    fact, what I would use the word -- which I think is what

9    you have been -- what you have mentioned here, is it is

10   a purposeful view.  What is the purpose of the treaty,

11   the language in accordance with its purpose?

12           THE COURT:  So we're talking about the intent of

13   the parties basically if we were to refer to contractual

14   terms?

15           MR. HORWICH:  Yes.  I mean, intent of the

16   parties, it -- the -- I think "expectation" is a better

17   word, and the reason why "expectation" is a better word

18   is because you could not -- when NIIT doesn't exist at

19   the time that the treaty is entered into, intent becomes

20   a little bit -- it moves a little bit towards

21   expectation.  I think had NIIT existed, we probably

22   would have been looking at this a little bit

23   differently.

24           So -- and I will take issue with the Government's

25   view of a narrow interpretation protecting the Fisc.

Matthew Christensen, et al. v. USA                          6/22/2022

    1    Indeed, we get -- the reason that the Government has
    2    opted for this in its brief is one Fifth Circuit case
    3    dealing with how you serve process and a law review
    4    article which, if they had quoted from the rest of the
    5    paragraph rather than stopped where they did, they would
    6    have come to the exact opposite conclusion.
    7           Put another way, the Supreme Court -- I have
    8    Supreme Court authority.  I have this Court's authority.
    9    I have -- I can't come up with a single tax case that
   10    does not say that, following up on what we are -- the
   11    argument that we are making.  So it comes down to a
   12    straightforward situation.  So the general principle is
   13    that we get a credit.  The credit is for -- against
   14    United States income tax.  On that basis, the Plaintiffs
   15    have proven their case.
   16           I would like to make sort of three more
   17    observations.  The first observation is although we have
   18    a lot of extrinsic authority, which is always useful to
   19    look at in a treaty interpretation case, that extrinsic
   20    authority predates the NIIT, all of it, and the reason
   21    that's important is not merely that the world has moved
   22    on but that prior to the NIIT, when you think of United
   23    States income tax and you think of the rules under the
   24    Code that allow for a credit, United States income tax
   25    and rules that would allow for this under the Code were

1    the same thing.  There was no dichotomy.  We didn't have

2    the United States equivalent of the IRAP or the Danish

3    hydrocarbon tax.

4           So to read commentary that deals with, in this

5    case, the French side of things and to try to apply that

6    solely to the United States and say, "You see, that

7    applies to the United States," it -- it -- you are

8    talking apples and oranges.

9           The United -- the questions that involve the

10   provisions and the limitations were based on what French

11   taxes were going to be allowed.  It goes back to the

12   basic point of how the U.S. tax credit system works.

13   The United States tax credit system works where we look

14   at a tax and we say, is that a creditable tax?  The

15   French, is that a creditable tax?  We don't say, did

16   that item translate -- the item of income have a tax on

17   which the United States applies a tax?  We look at

18   whether the French tax was creditable.

19           When we look at limitations, we look at

20   limitations for cross-crediting.  Those are amounts.

21   Both parties, although we use different examples, agree

22   on all of this.  In mine, it was the French and the

23   Swiss.  It's easy to imagine that sometimes you can

24   cross-credit if they were in the same category, and

25   sometimes you can't.  Those are cross-crediting.  Those

Matthew Christensen, et al. v. USA                        6/22/2022

1    are provisions.  Was it a creditable tax limitation?

2    How much could you do?  With but we never had to worry

3    about United States income tax because we never had to

4    consider it because it never came up.

5          Here it comes up, and in any context of

6    reciprocity -- and I know the Government takes issue

7    with reciprocity, but this is what a treaty is about --

8    the expectations of the parties are always going to be

9    you give up some, I give up some, it works better for

10   both of us.

11         It is extraordinary to say that in a situation

12   where, when the United States has primary taxing

13   authorities, the French are going to have to give a

14   credit for NIIT, but when the French have primary taxing

15   authorities, the United States does not have to.  That's

16   an extraordinary statement.

17         The second point that I would like to follow up

18   on is simply a procedural one.  The Government takes

19   issue with whether or not there should be a remand

20   because we have not demonstrated that we complied with

21   what they call the three-bite rule.  That position is,

22   again, simply wrong.

23         I have submitted affidavits.  I have submitted

24   French tax returns or French avis d'impot, which is

25   the -- effectively the receipt, and I've submitted U.S.

1   tax returns.  All of those show we did not try to claim

2   a credit for any U.S. -- a credit -- a French tax credit

3   for any U.S. source income tax.

4          I will go further and say that I have asked the

5   Government from the very outset of this case, what do

6   you need?  What documents do you want from me?  And

7   they've repeatedly said none.  It's only at the last

8   minute that they came up and said we need a remand

9   because you haven't established it.

10         THE COURT:  What typically would you think

11   they're asking for?  I mean, obviously Mr. Bergmann can

12   articulate what he thinks is missing, but you've been in

13   this area of practice for a long time.  What is it that

14   you think they -- or what has Mr. Bergmann said to you

15   is missing?

16         MR. HORWICH:  Mr. Bergmann has asked me for a

17   copy of the French tax return, but I would have to

18   translate that, and, frankly, this is a -- I would have

19   if they had asked for it, but they didn't ask for it

20   during discovery, and I have met my burden.

21         THE COURT:  All right.  So we've talked about

22   this before, obviously, and the fact that it has to be

23   translated is not a huge deal.  It is some -- it can be

24   somewhat costly, but it's not enormous, and I guess the

25   question is why didn't you, upon asking -- having been

Matthew Christensen, et al. v. USA                                    6/22/2022

1   asked for it, just simply give it to them?  I'm not sure
2   why -- we have talked about this before, and I --
3            MR. HORWICH:  Right.
4            THE COURT:  -- and it baffled me at the time, and
5   I thought this was being worked out, frankly, but
6   apparently not, and that's where we are today, and the
7   question is whether it is absolutely essential.
8            Of course, we are going to have to turn to
9   Mr. Bergmann for seeing where we go from here, but --
10           MR. HORWICH:  It's a --
11           THE COURT:  -- I'm curious about your resistance
12   to it.
13           MR. HORWICH:  My resistance to this is that I
14   thought we had solved it as well when I received an
15   email from Mr. Bergmann saying that he had agreed that
16   the tax had been paid, and I -- that's in the record.
17   My further resistance to this is that although you have
18   correctly stated that it is not a huge burden, I'm doing
19   this case on a pro bono basis and spending more money to
20   get a tax return translated when there's $3,800 at stake
21   and absolutely nothing turns on it, and I have provided
22   affidavits proving that we have done what we have done,
23   and the Government repeatedly told me they didn't need
24   any more documentation.  I had had enough.
25           THE COURT:  That's unfortunate.

Matthew Christensen, et al. v. USA                          6/22/2022

```
 1          MR. HORWICH:  Well, it is, but I'm in a situation
 2   where I believe that I have done what was required to
 3   meet my burden of proof on this and that the Government
 4   had said that they did not need anything from me, and if
 5   they turn around after discovery is closed and start
 6   asking for things, it's -- as you say, it's unfortunate,
 7   but I don't believe that it is -- I believe I have done
 8   what has needed to be done, and I actually don't know
 9   what else, given where we have gotten to, that I could
10   do without perpetuating this.  I thought that we had
11   finished it.
12          THE COURT:  Well, it's perpetuated, but,
13   Mr. Bergmann, when it's your turn, I guess I would like
14   you to address two of the questions that were just
15   raised.  One is whether the Government -- whether you or
16   anybody on behalf of the Government indicated to
17   Plaintiffs' counsel that they didn't need any more --
18   did not need any more documents; and number two, whether
19   your request came after the close of discovery.
20          MR. HORWICH:  With respect to the first one --
21   and to not embarrass Mr. Bergmann, because he did come
22   in a little later -- I can provide an email to that
23   effect, that the Government did not require documents.
24          THE COURT:  Well, we will sort this out before we
25   leave here today.
```

Matthew Christensen, et al. v. USA                                6/22/2022

 1          MR. HORWICH:  Okay.

 2          Second, the last point that I wanted to make is

 3   that the Government has argued that there would be a

 4   remand required to create rules associated with this.

 5          THE COURT:  To create what associated with --

 6          MR. HORWICH:  Well, the Government has made quite

 7   a large argument about the fact that there would need to

 8   be a series of rules of how to do this, how to allow a

 9   treaty-based credit, and undoubtedly, if the Court rules

10   in the favor of the Plaintiffs in this case, there will

11   need to be at least an amendment to the foreign tax

12   credit form, and that is -- that would be expected.

13          However, the fact that the Government has not

14   created a series of rules does not stop me from working

15   this case.  At the end of the day, in the absence of

16   rules, the parties agree more French tax was paid than a

17   combination of the U.S. normal tax and the NIIT.  That

18   is sufficient.

19          And no matter what -- you know, I think we

20   default to do something reasonable, but I cannot come up

21   with any argument of how whatever the Government might

22   craft in terms of dealing with an extremely unlikely

23   scenario -- but it's tax, so there is always going to be

24   one or two things that could be a bit odd -- but when 99

25   percent of the time the situation is going to be as

Matthew Christensen, et al. v. USA                          6/22/2022

1    basic as did you pay more tax in France than your
2    ordinary income tax plus your NIIT, that is sufficient
3    for this case.
4           And in closing, Your Honor, the point of bringing
5    a case that was only for --
6           THE COURT:  Well, don't move on that fast.  What
7    rules have to be amended?  You've said the form needs to
8    be amended.  Forms are easy.  What rules have to be
9    amended?
10          MR. HORWICH:  I do not believe you would need to
11   do anything here besides include in the concept of what
12   is the United States tax that was paid, that you would
13   have to add a line and say what was the United States
14   NIIT that was paid -- what NIIT was paid.
15          THE COURT:  So are you still talking about the
16   form or are you talking about a rule?
17          MR. HORWICH:  Well, when you say a rule and a
18   form, I believe that one person's rule is another
19   person's -- amending a rule is --
20          THE COURT:  Oh, there is a difference.  There is
21   a difference, but --
22          MR. HORWICH:  Well, I do not believe you need a
23   regulation.
24          THE COURT:  That's what I'm asking.
25          MR. HORWICH:  No, I do not believe you need a

Matthew Christensen, et al. v. USA                          6/22/2022

1    regulation.  I think you can do this by simply amending
2    the form and having an explanation in it, and if you
3    really -- you could also do it by a notice.
4          THE COURT:  Okay.
5          MR. HORWICH:  So in final answer, the reason I
6    brought a $4,000 refund suit, Your Honor, was
7    specifically to avoid any complications.  Obviously, I
8    failed with respect to this one point, but the point of
9    avoiding this was this was a very straightforward way of
10   explaining -- of bringing -- of challenging this case,
11   and, as I say, I believe that I -- if the Court has more
12   questions, I would be happy to answer them or, indeed,
13   on reply after Mr. Bergmann has his turn.
14         THE COURT:  Let me just take a look at my notes
15   here for a moment.
16         Tell me a little bit about -- in 26 USC 6511(d),
17   the phrase "against the tax imposed by," how does that
18   impact what your argument is?  What's the significance
19   of that phrase?
20         MR. HORWICH:  The significance of that phrase is
21   that in 6511(d), that is the provision in the Code which
22   allows for an extended statute of limitations in the
23   case of a foreign tax credit.
24         THE COURT:  So we're past that issue?
25         MR. HORWICH:  But there's a --

1          THE COURT:  There's a wrinkle?

2          MR. HORWICH:  There's a wrinkle.

3          THE COURT:  Yep.

4          MR. HORWICH:  And the wrinkle is that it doesn't

5    say a foreign tax credit as allowed by Section 901.  It

6    includes -- I'm afraid I don't have a copy of the

7    statute right in front of me --

8          THE COURT:  Well, you should.  If you're coming

9    to argue, you should have the things you need.

10         MR. HORWICH:  Sorry.  It says as well "treaty."

11   It says "by code or by treaty."  So, in other words, the

12   Code recognizes that there is a wider claim, foreign tax

13   credit claim than merely by Code.

14         THE COURT:  Okay.  Let's reserve the rest of the

15   questions for after Mr. Bergmann in your reply.

16         MR. HORWICH:  All right.

17         THE COURT:  Thank you, sir.

18         Mr. Bergmann?

19         MR. BERGMANN:  Good morning, Your Honor.  May I

20   speak from here?  Is that all right?

21         THE COURT:  You may.  You have multiple papers

22   with you and that's easier to access.

23         MR. BERGMANN:  I thought so.  Thank you.

24         Before I delve into my argument, I wanted to

25   answer a couple of the Court's questions that Your Honor

1   had for Mr. Horwich that I can also I think provide

2   answers to.

3           THE COURT:  Let's talk about the French

4   translation document.

5           MR. BERGMANN:  Okay, we can start with that.

6           THE COURT:  Let's start with that.

7           MR. BERGMANN:  It is true that discovery closed,

8   and I'm not sure in terms of the timing of when I

9   made -- had exchanged emails with Mr. Horwich, whether

10  it was a couple weeks before or a couple weeks after the

11  discovery cutoff had happened, but I think it was after

12  the time that the Government could have served formal

13  discovery requests and have responses be due before the

14  discovery period had closed.

15          The Government's issue here with respect to the

16  computations in this case is not one that is based upon

17  needing documents from the Plaintiff that they have not

18  provided.  What we asked for is for the Plaintiff to

19  demonstrate that when they computed the foreign tax

20  credits, when they computed their French tax, that they

21  properly took account of U.S. tax on the first bite that

22  applies to U.S. source investment income, and so it is

23  essential for a taxpayer, when properly applying the

24  three-bite rule, when they pay French tax in step two,

25  to make sure that they account for the U.S. tax that was

Matthew Christensen, et al. v. USA                                    6/22/2022

1   due in step one.

2          And we asked the Plaintiff to -- really as part

3   of their burden of proof in their summary judgment

4   motion -- where we said, yeah, we agree you paid the

5   tax.  You've given us sufficient evidence to show your

6   returns, but you haven't showed us that when you

7   computed the amount of French tax that you paid, that

8   you properly took account of the first bite of U.S.

9   income tax, and that's an issue that we believe is part

10  of their burden of proof.

11         And I think in our -- in the Government's cross

12  motion and response, we said you haven't shown that you

13  did this properly, and in their reply, they did not show

14  that they did it properly.  And so in our final brief we

15  said they haven't shown that they did it properly.

16         We're not saying that, because they failed to

17  meet this burden of proof, that if Your Honor agreed

18  with them as a matter of law, that they should somehow

19  lose.  We're just saying that if the Court were to agree

20  with them as a matter of law, that we have some work to

21  do which might just involve the Plaintiff showing us how

22  they specifically computed the dollar amounts of foreign

23  tax credits that were claimed on both their U.S.

24  foreign -- on their U.S. income tax returns and their

25  French income tax returns.

Matthew Christensen, et al. v. USA                          6/22/2022

```
1              THE COURT:  So we are kind of in that proverbial
2    tennis match of burden of proof is what you're saying.
3              MR. BERGMANN:  Yes, Your Honor.
4              THE COURT:  And did you say you don't need any
5    more documents?
6              MR. BERGMANN:  Yes.
7              THE COURT:  And was this case bifurcated?  The
8    answer is no.
9              MR. BERGMANN:  No.
10             THE COURT:  So the question is how we solve this.
11   I think the statement of not needing more documents
12   conceivably could cover not needing more documents
13   literally to prove whatever, including damages.
14             I also think that initially the burden of proof,
15   Mr. Horwich, to prove damages is on the Plaintiff.  Do
16   you deny that?
17             MR. HORWICH:  No.
18             THE COURT:  All right.  And so the question for
19   you, Mr. Horwich, is you didn't submit that.  It is a
20   calculation necessity?  Yes or no, Mr. Horwich?
21             MR. HORWICH:  I think I gave the calculations
22   in --
23             THE COURT:  You gave your own version of the
24   calculations, but did you give something to prove the
25   calculations?  You are going to have to go through these
```

Matthew Christensen, et al. v. USA                           6/22/2022

```
 1    steps to get to calculations --
 2            MR. HORWICH:  Yes.
 3            THE COURT:  -- or do you deny that?
 4            MR. HORWICH:  No.  I would say that my affidavit
 5    from Mr. Horton went through exactly how we --
 6            THE COURT:  Well, but he's asking for the -- not
 7    your version.  Attorneys can't testify.  Documents can
 8    testify.  People can testify.
 9            MR. HORWICH:  Mr. Horton is an accountant.  He
10    submitted an affidavit.
11            THE COURT:  Well, I mean, then we have to get
12    Mr. Horton to come testify and say he looked at the
13    French tax treaty, too, but, you know, that doesn't
14    solve it really.
15            So, bottom line -- why don't you go ahead and be
16    seated.  We are going to have to solve this, and I think
17    we have to solve it now, because for me to come to a
18    conclusion, I've got to have the ability to have the
19    Government look at the document, in all fairness.
20            And so how long is the document?  You can sit
21    down for a minute.  We are going to go back and forth
22    here for a moment and try to solve the problem, and then
23    we will get to the legal issues again.
24            How long is the document?
25            MR. HORWICH:  If it's a French income tax
```

Matthew Christensen, et al. v. USA                          6/22/2022

1    return --
2              THE COURT:  Right.
3              MR. HORWICH:  -- it's several pages.
4              THE COURT:  A guesstimate?  I'm not going to hold
5    you to it.
6              MR. HORWICH:  Fifteen.
7              THE COURT:  Fifteen, all right.  So that's not a
8    lot of translation, and half of it is probably numbers,
9    and even though they put the slash in the seven and
10   things like that, it probably isn't that hard to read
11   the numbers.
12             MR. HORWICH:  The problem is that I submitted the
13   receipt that you get from the French Government that
14   goes through all of the same numbers, and I translated
15   it.  Getting a tax return is not going to be helpful.
16             THE COURT:  Well, my -- well, I don't understand
17   what you're saying.  You translated it.  I have had
18   other cases that involve translation, and generally
19   speaking, the Government has a right to do their own
20   translation whether they want to or not.
21             So the question to you, Mr. Bergmann, is when you
22   get that French document -- let's say you get it in
23   French -- would you do your own translation whether you
24   got a translation submitted or not?  Generally the
25   Government is going to want to verify the translation

33

Matthew Christensen, et al. v. USA                          6/22/2022

1    anyway.

2              MR. BERGMANN:  No, Your Honor.  This is not a

3    question of whether we need a French translation.  The

4    issue is there are numbers on the return, and we don't

5    know how that number was calculated, and we want to make

6    sure, when the number was calculated, that they properly

7    applied the three-bite rule.

8              THE COURT:  So do you need a translation?

9              MR. BERGMANN:  No, ma'am.  No, Your Honor.

10             THE COURT:  Just the document?

11             MR. BERGMANN:  Just need an explanation for how

12   the number was reached on the -- the number that appears

13   on the document, how it was computed, the foreign tax

14   credit numbers, and we asked for that by email.  It's

15   something that I believe is an essential part of their

16   burden of proof and in order to demonstrate that they're

17   entitled to --

18             THE COURT:  Let's get away from burden of proof

19   for a moment and try to solve this.

20             MR. BERGMANN:  Okay.

21             THE COURT:  And if we can't, I'll solve it for

22   you, but why, Mr. Horwich, would you not just hand it

23   over since what they're looking for is the numbers and

24   are not asking for a translation?

25             Now, if they decide at the government level to do

Matthew Christensen, et al. v. USA                              6/22/2022

1    a translation, that's their problem.  So you're not
2    going to be paying for a translation here.  According to
3    Mr. Bergmann, he doesn't want that.
4            Is that correct?
5            MR. BERGMANN:  That's correct.
6            THE COURT:  All right.  So why not hand it over?
7            MR. HORWICH:  I will hand it over.
8            THE COURT:  Lovely.  And then we can supplement
9    the record so that we have it as well.
10           MR. BERGMANN:  Sure.
11           THE COURT:  And, although perhaps dangerous, I
12   read enough French that I probably could even translate
13   it, but I won't do a translation on my own.  If I have a
14   problem, I'll come back to you-all.
15           MR. BERGMANN:  And I am glad to work with
16   Mr. Horwich offline to make sure that we're comfortable
17   with the evidence that he's able to establish as to how
18   the numbers were computed.
19           THE COURT:  Okay.  Let's get that, Mr. Horwich.
20   How much time do you need?  You are obviously not in
21   your office.
22           MR. HORWICH:  I will be back in my office on
23   Monday.  Mr. Bergmann will have it on Tuesday.
24           THE COURT:  Excellent.  Problem solved.  Thank
25   you, gentlemen.

Matthew Christensen, et al. v. USA                                6/22/2022

```
 1             All right.  Let's get to the legal issues.  You
 2    wanted to address a couple things first.  We can start
 3    with that.
 4             MR. BERGMANN:  Yes, of course.  Your Honor had
 5    asked whether there were other cases involving the net
 6    investment income tax and whether foreign tax credits
 7    may be claimed against that tax.
 8             THE COURT:  Do they also involve the NIIT is
 9    really part of the problem.
10             MR. BERGMANN:  Yes.  The Toulouse case is the
11    only case where there's a published opinion involving
12    the NIIT.
13             THE COURT:  Right.
14             MR. BERGMANN:  I am aware that fairly recently,
15    maybe a month or two ago, a taxpayer, whose name I do
16    not presently recall, filed a claim in the Central
17    District of California, the U.S. District Court, in a
18    case that did not involve France, but I understand --
19    secondhand, I have not read the complaint --
20             THE COURT:  Right.
21             MR. BERGMANN:  -- that the complaint involved
22    claims that the net investment income tax -- that tax
23    credits should be allowed against it not under an income
24    tax treaty but under a totalization agreement with the
25    relevant company.
```

```
 1            THE COURT:  Can you get us the name of that and
 2    Mr. Horwich as well?
 3            MR. BERGMANN:  I can.  I would have to provide
 4    that to Your Honor's Law Clerk after we are finished at
 5    the hearing today.
 6            THE COURT:  That's perfectly fine, and a copy to
 7    Mr. Horwich as well.
 8            MR. BERGMANN:  Yes, I will be glad to do that.
 9            THE COURT:  All right.
10            MR. BERGMANN:  My understanding is that that case
11    is at the very earliest stages and does not involve
12    France --
13            THE COURT:  Right, and may or may not be relevant
14    is what we're saying --
15            MR. BERGMANN:  Yes.
16            THE COURT:  -- but give it to us and we will make
17    that decision.
18            MR. BERGMANN:  Yes.  For the purpose of
19    completeness, I thought I would let the Court know.
20            THE COURT:  That's fine.  Okay.
21            MR. BERGMANN:  And then I guess one other thing
22    to talk about with respect to the computational issues
23    before we dig into the legal questions, on pages 35 to
24    37 of the Government's brief, we identified a number of
25    computational problems that would occur if this Court or
```

Matthew Christensen, et al. v. USA                          6/22/2022

1    any other court were to determine that the net

2    investment income tax was subject to foreign tax

3    credits, contrary to the provisions of the United States

4    Code.

5            There are many of them --

6            THE COURT:  All right, let's stop right there.

7    What do you mean by "contrary to the U.S. Code"?

8            MR. BERGMANN:  Well, the U.S. Code provides

9    specifically that foreign tax credits are only allowed

10   against the taxes under Chapter 1.

11           THE COURT:  That's the Chapter 1 argument we are

12   going to get to?

13           MR. BERGMANN:  Yes.

14           THE COURT:  Okay.

15           MR. BERGMANN:  Yes.  And the one that I think is

16   the easiest to explain is the one that I elaborated on

17   the most on pages 35 to 36 of the brief, which is a

18   fairly simple example.  If I am -- the net investment

19   income tax is the lesser of two sides.  It's either --

20   it's the amount over $250,000 or the total amount of

21   net -- of gross income or the total amount of net

22   investment income.

23           So if, for -- and then you have the problem of

24   what happens if your investment income -- if half of it

25   is from one country and half of it is from another.  So

Matthew Christensen, et al. v. USA                                    6/22/2022

1    we could take a hypothetical example -- and I have to in
2    this case in order to show the problem -- of a taxpayer
3    in France that has $300,000 of total income, all of it
4    being investment income, half of it being from the
5    United States source and half of it being French source.
6    That hypothetical taxpayer would pay a net investment
7    income tax on $50,000 because the -- it -- because
8    the -- it would be the amount over $250,000 of the
9    taxpayer's total income.
10         In that case, how do we then determine what
11   portion of the $50,000 is U.S. source or French source?
12   There are no rules that exist that would -- that
13   demonstrate how that would occur, and the reason is, in
14   our -- in the Government's view, that's because Congress
15   never intended for this to be subject to foreign tax
16   credits.  So the Code doesn't provide any rules for how
17   to do this, and there is no regulations or other
18   administrative guidance that would show how to do this.
19         Now, that's a simple example, but there are
20   numerous other complicated examples that occur in the
21   foreign tax credit world involving the method of
22   applying cross-crediting under Section 904 limitations;
23   there are complexities with respect to carry-forwards
24   and carry-backs of foreign tax credits from one year to
25   another; and there are even further complexities when a

Matthew Christensen, et al. v. USA                    6/22/2022

1    taxpayer has a loss, an investment loss in a later year,

2    and then they can carry back the loss from one year to

3    the other, and how would those rules work in those

4    circumstances.

5          And while this particular Plaintiff may not

6    necessarily raise those issues, the tax world is an area

7    that is subject to great mischief and very creative

8    accountants, and the Service has to apply a scheme, a

9    framework for applying law cognizant of the fact that

10   there are all of these wrinkles that can happen.

11         And so that's one of the reasons why we suggest

12   that Congress may very well have decided not to make the

13   net investment income tax subject to foreign tax credits

14   because there are all these problems, but if the Court

15   were to determine that there's a treaty-based credit

16   that is independent of the Code, we respectfully suggest

17   that in that circumstance we might have to have further

18   briefing in order to discuss what proper framework would

19   apply to this particular Plaintiffs' circumstances.

20         THE COURT:  All right.  Let me ask you a couple

21   questions about that.  Further briefing is not a

22   problem, of course, and I'm not suggesting I want to

23   sort of carry this on and on and on, but unfortunately,

24   sometimes we do find ourselves in that position, and

25   that's a possibility even if I, after hearing your

Matthew Christensen, et al. v. USA                                    6/22/2022

1    arguments, going back and rereading the briefs, have

2    further questions for you, and you would get further

3    briefing anyway.  So I'm not -- I don't want to do that

4    necessarily, but that's always a possibility.

5         The part that I'm having a little more trouble

6    with, aside from the comment about creative mischievous

7    accountants -- you kind of insult my father that way,

8    but that's okay --

9         MR. BERGMANN:  My apologies.

10        THE COURT:  No, I'm just kidding.

11        -- but the real issue I'm having here is statutes

12   are passed all the time, and then there is an enabling

13   regulatory development, so that doesn't indicate -- the

14   fact that there are no rules on how to do it to me at

15   least I don't think indicates that there was an intent

16   of Congress not to need those rules and not to, you

17   know, have something happen here.  I think that's a

18   pretty far-flung argument.  Why isn't it?

19        MR. BERGMANN:  Well, we are somewhat hamstrung

20   here by the fact that net investment income tax was

21   passed in a hurry at the end of the Affordable Care Act,

22   so there's not much legislative history.

23        THE COURT:  Right.

24        MR. BERGMANN:  We do have what is we believe a

25   clear manifestation of congressional intent, that it

Matthew Christensen, et al. v. USA

1   should be put in a new chapter of the Code, that it's --

2   they created a brand new chapter, Chapter 2(a), when

3   they could have shoved it into another chapter or --

4            THE COURT:  But you could argue that that was

5   because of things other than the tax rules but more

6   COVID-driven, what are the -- or time-driven,

7   process-driven.  Congress enacts statutes in funny ways

8   and tucks statutes in funny places all the time.

9            MR. BERGMANN:  That is true, although in this

10  case the fact that it was put in a new chapter has

11  significant effects on the Internal Revenue Code.

12           THE COURT:  No, I understand.  I don't know where

13  I come out on this, honestly.  I'm just kind of pushing

14  questions.

15           MR. BERGMANN:  Yes.

16           THE COURT:  Don't ever read into my questions a

17  result, because we really do go back afterwards and look

18  at everything all over again, and what we're really

19  doing is asking questions that are the first pass

20  through the information that's provided by counsel.

21           So I'm not sure I can go there, having done,

22  among other things in my career, regulatory development

23  with very little direction from statutes, and so I'm a

24  little bit troubled by that argument and the

25  implications of that argument.  I know this is a case of

Matthew Christensen, et al. v. USA                          6/22/2022

1    first impression probably as well in the Court, but that
2    to me would be an almost bigger mental leap, to buy that
3    argument.
4         MR. BERGMANN:  I understand Your Honor's
5    reluctance.  I would just say that, you know, we are
6    attempting to find an explanation for the decision to
7    put it in Chapter 2(a), and this we believe is a
8    plausible explanation.
9         THE COURT:  I always award creativity, so you get
10   the E for effort, but I'm not sure you get the argument.
11        MR. BERGMANN:  Well, then, I will move on, Your
12   Honor.
13        THE COURT:  All right.
14        MR. BERGMANN:  But just with respect to the
15   computational point, I think it may -- if the Court were
16   to determine that they are entitled to a treaty-based
17   credit that is independent of the Code, that it might be
18   necessary -- that it might be appropriate -- but subject
19   to the Court's desires, of course -- to make a decision
20   on the legal issues and then ask the parties to then
21   cooperate on computations, or if there is a way for us
22   to then -- if we had some disagreement, we could then
23   attempt to brief the computational issues separately.
24        THE COURT:  Well, the obvious answer is try to
25   settle it.

Matthew Christensen, et al. v. USA                                    6/22/2022

```
 1            MR. BERGMANN:  Yes, although settle it subject to
 2     the our right to appeal the legal decision, I would
 3     guess.
 4            THE COURT:  So would the Government --
 5     assuming -- and I -- really, do not read into this,
 6     because I am still up in the air on the ultimate result.
 7     I have a lot more thinking to do.
 8            But would the Government object to entering a
 9     judgment for the $3,851 -- the 3,000 or almost 4,000
10     dollars?  There's a number in the complaint.  It's a
11     very specific number, $3,851 and no cents.  Would the
12     Government object to a judgment in that number or --
13            MR. BERGMANN:  Yes, absent additional proof from
14     the Plaintiff and --
15            THE COURT:  Well, assuming you're getting the
16     French tax return, would you still object?
17            MR. BERGMANN:  Yes, because we would then have to
18     make sure that, as a computa -- there are computational
19     issues that the Service has not been required to address
20     as to how the net investment income tax would be
21     computed if -- how the tax credit against the NIIT would
22     have been computed if the Court were to determine that
23     there was a treaty-based credit that is --
24            THE COURT:  All right.  So what I would probably
25     do in that case, subject to talking about it at the time
```

Matthew Christensen, et al. v. USA                                    6/22/2022

1    if the Plaintiff prevails on the legal issues, is

2    probably give you a period of time to do that and -- but

3    it won't be a very long one --

4          MR. BERGMANN:  Understood.

5          THE COURT:  -- and then enter judgment, of

6    course, subject to your right to appeal, of course.

7          MR. BERGMANN:  Yes, of course.

8          THE COURT:  I'm assuming the Government will

9    appeal this case if they lose, and the Plaintiff will

10   appeal if the Plaintiffs lose, so we're operating under

11   that assumption anyway in a case like this.

12         MR. BERGMANN:  Yes.  As I often am required to

13   say when I'm asked whether the Government will appeal,

14   and as I --

15         THE COURT:  You are not in the Solicitor

16   General's office --

17         MR. BERGMANN:  Yes, exactly.

18         THE COURT:  Got it.

19         MR. BERGMANN:  Okay, thank you.

20         THE COURT:  All right.

21         MR. BERGMANN:  Okay.  So now moving on to the

22   legal argument, this is a straightforward case

23   concerning the interpretation of a tax treaty.  Article

24   24-2(a) of the U.S.-France income tax treaty provides

25   for a foreign tax credit against the United States

Matthew Christensen, et al. v. USA                                    6/22/2022

 1    income tax but only if in accordance with or subject to
 2    the limitations of United States law.
 3           The Internal Revenue Code does not allow
 4    taxpayers to claim foreign tax credits against the net
 5    investment income tax, which Congress chose to put in
 6    Chapter 2(a) of the Code rather than Chapter 1, and
 7    Section 901(a) of the Code allows foreign tax credits
 8    only against taxes imposed under Code Chapter 1.
 9           Thus, Article 24-2(a), by its terms, does not
10    provide taxpayers with a basis for claiming tax credits
11    that is independent of the Code.  The language that I'm
12    referring to, the "in accordance with," "the provisions
13    of," and "subject to the limitations of U.S. law"
14    language, this is the same language that Your Honor
15    relied upon in the Snap-On Tools case --
16           THE COURT:  That's a long time ago.
17           MR. BERGMANN:  It was a while ago, yes.
18           THE COURT:  That was the beginning of my career.
19           MR. BERGMANN:  -- to hold that the Government's
20    position in that case, which was one that argued that
21    the treaty was incon -- overrode the provisions of the
22    Code, and Your Honor relied on that language and said
23    no, no, no, that's not right.  This treaty provision
24    says "subject to the provisions of the Code."
25           THE COURT:  You never know whether I've matured

Matthew Christensen, et al. v. USA                          6/22/2022

1    since then.

2              MR. BERGMANN:   I'm sure Your Honor has.

3              THE COURT:   I hope so.

4              MR. BERGMANN:   It's the same language that we're

5    asking the Court to apply here.

6              Now, in arguing otherwise, these Plaintiffs seek

7    a unique benefit that would put them and other U.S.

8    taxpayers residing in France in a better position than

9    U.S. taxpayers residing in the United States.   That is

10   because U.S. taxpayers residing in the United States may

11   be required to pay two different taxes on the same

12   dollar of investment income, both the general U.S.

13   income tax under Chapter 1 of the Code and the net

14   investment income tax under Chapter 2(a) of the Code.

15             I myself, together with my wife, on a joint

16   return last year paid multiple taxes, both a net

17   investment income tax and the general income tax on

18   dollars of investment income.   Many other people that

19   are U.S. citizens residing in the United States are in

20   the same exact position.

21             Under the Government's position here, a U.S.

22   citizen residing in France could also be subject to two

23   levies on the same dollar of investment income, both the

24   regular French income tax, subject to tax credits, and

25   the U.S. net investment income tax.   They're in the same

Matthew Christensen, et al. v. USA                    6/22/2022

1    position that U.S. citizens are.  They're paying

2    multiple levies on the same dollar of investment income.

3         But here, under the Plaintiffs' interpretation,

4    they and others like them would be in a better position

5    than the United States, because under his argument, the

6    net investment income tax would also be eaten up by

7    foreign tax credits and, thus, they would only pay one

8    levy on their income -- on their net investment income.

9         So for them to suggest that there is a double

10   taxation policy implication involved in this case is

11   simply wrong because they are the ones that are asking

12   for a benefit that is not the same as that that anyone

13   in the United States would have to pay.  We don't refer

14   -- it's not double taxation, because double taxation has

15   a meaning, a particular meaning under international tax

16   treaties, but it is what I would call multiple taxation.

17   There are multiple levies imposed on the same dollar of

18   income, and the fact that they would be required to pay

19   multiple levies on the same dollar of income does not

20   put them at a disadvantage vis-à-vis similarly situated

21   taxpayers in the United States.

22        The Government asks the Court to apply the treaty

23   as written and deny Plaintiffs this benefit to which

24   they are not entitled.  The text of Article 24-2(a),

25   which is quoted on page 21 of the Government's opening

Matthew Christensen, et al. v. USA                           6/22/2022

1    brief, is clear.  It provides for the allowance of a tax
2    credit against the United States income tax only in
3    accordance with the provisions of and subject to the
4    limitations of the law of the United States.
5           As the Tax Court held in the Toulouse opinion,
6    the requirement that the foreign tax credit must be in
7    accordance with the Code means that the Code must
8    provide the credit if one exists, and as we've said,
9    because Congress put this in Chapter 2(a) and limited
10   the application of foreign tax credits to taxes under
11   Chapter 1, Congress provides expressly that the credits
12   are not allowed against the net income tax.
13          Now, the Plaintiffs make various arguments in
14   response, and I'll go through them one by one.  First
15   they argue that the parenthetical inside Article 24-2(a)
16   requires that the laws of the United States --
17   recognizes that the laws of the United States may be
18   amended over time and that U.S. law, as amended, would
19   continue to apply so long as such amendments did not
20   interfere with the general principle hereof.
21          Well, the treaty doesn't say what the general
22   principle hereof is, what it means.  Now, the Treasury
23   Department's technical explanation does.  It says that
24   the general principle, as explained by the technical
25   explanation, refers to the allowance of a credit.  Thus,

1    while the United States may not outright repeal the

2    foreign tax credit framework from the Code, it has wide

3    leeway to decide the extent to which to allow the credit

4    and any conditions to attach to it, and as I think both

5    parties agree, U.S. executive interpretations of treaty

6    language are entitled to great weight under the Supreme

7    Court opinion in Sumitomo Shoji America.

8            Let me digress now to talk about the shared

9    expectations issue which I think Your Honor discussed

10   with Mr. Horwich earlier.  There is case law which

11   suggests that the job of the courts is to attempt to

12   divine the parties' shared expectations when the courts

13   interpret treaty language.  This broad language

14   regarding shared expectations is really regarding treaty

15   interpretation of all treaties, not just tax treaties.

16           Tax treaties are different in certain

17   circumstances, and I -- the Kaiser article from -- that

18   we -- the law review article that we cited in our papers

19   describes some of this.  Tax treaties frequently contain

20   a provision called Article 3-2, which is a provision

21   that appears in the French treaty.  It's one that says,

22   "Where a treaty contains undefined terms, under Article

23   3-2, you apply the law of the country whose taxes are at

24   issue in order to determine what that term means," which

25   expressly recognizes that there can be a treaty where

Matthew Christensen, et al. v. USA                    6/22/2022

1    one country thinks it means one thing and the other

2    country thinks it means something completely different,

3    and each country gets to apply its own interpretation of

4    the treaty to the application of its own tax.

5            So to suggest that all tax treaties that -- when

6    one is interpreting those treaties, it is an exercise in

7    divining the shared expectations of the parties is

8    inconsistent with the way many tax treaties are drafted,

9    including this particular tax treaty between the United

10   States and France.

11           And many of the cases that refer to a shared

12   expectations standard in the tax treaty context involve

13   treaties that don't include a provision of Article 3-2,

14   or they involve the interpretation of provisions in tax

15   treaties that do not constrain the sovereign power of a

16   country to impose tax.

17           They -- so there are cases that involve the

18   interpretation of the mutual assistance provisions of

19   treaties.  These are the treaties -- these are the

20   provisions that require one country to assist another

21   country with an exchange of information.  Those

22   particular provisions and interpretations of those

23   provisions aren't constraining the sovereign right of a

24   Government to tax, and so I think it is one thing -- and

25   I think there are also separation of powers issues that

Matthew Christensen, et al. v. USA                          6/22/2022

1    are at stake here, where if -- if one assumes that there

2    is an ambiguous provision of a treaty, the question is,

3    who should be the arbiter of determining what that

4    means?  Should this Court or any other court be allowed

5    to tell the Executive Branch, "I think this ambiguous

6    term means X instead of Y," or should the Executive

7    Branch be allowed to apply their own interpretation

8    subject to the right of the foreign country to object in

9    an appropriate manner and forum, either in connection

10   with further negotiations on the treaty?

11          There's also a process that's in place.  If

12   France were to disagree with the United States' view

13   about whether net investment income tax should be

14   subject to foreign tax credits, there's a competent

15   authority procedure that is in place that allows the

16   Government of France, through the French Competent

17   Authority, to send a request for information -- to send

18   a request to the U.S. Competent Authority to say what

19   this -- what's -- why are you applying this tax?  We

20   disagree.

21          And there's a process that can occur in that

22   circumstance that would allow the two nations to resolve

23   their differences, and this, indeed, is a process that

24   these Plaintiffs themselves could have started by filing

25   an application with the French Competent Authority and

Matthew Christensen, et al. v. USA                          6/22/2022

1    seeking to ask France to pursue their position on their

2    behalf in negotiations with the United States, a process

3    that, as far as we know, they never undertook.

4         THE COURT:  So let me ask you that.  I understand

5    that that's an available avenue of helping resolution in

6    cases like this.  The absence of doing it, though, where

7    does that leave us?  It wasn't done as I understand it.

8    Is that correct?

9         MR. BERGMANN:  Yes, that's correct.

10        THE COURT:  All right.  And, I mean, we do the

11   deference argument all the time.  Any regulatory-based

12   case, we have that argument that's inherent in the case,

13   comes from the Government, usually articulated -- not

14   always -- but it's there, that if an agency interprets

15   its own regulations, there is a certain amount of

16   deference up to a point.

17        MR. BERGMANN:  Yes, that's true.

18        THE COURT:  So is the "up to the point" here the

19   words of the treaty?

20        MR. BERGMANN:  Yes.  It's the words of the

21   treaty.  We believe that the parenthetical, "the general

22   principle hereof," that language, that is an ambiguous

23   term.  If Your Honor were to believe that "the general

24   principle hereof" was completely unambiguous, that it

25   somehow reflected a meeting of the minds between the two

Matthew Christensen, et al. v. USA                          6/22/2022

 1    countries as to exactly what that meant, in that case,
 2    it might be possible for this Court or another court to
 3    determine that that should -- that that should apply.
 4          THE COURT:  So is your argument, then, from a
 5    strictly legal perspective, that if certain key words
 6    are ambiguous, then deference has a higher value or an
 7    absolute value?  Which is it?
 8          MR. BERGMANN:  I think it has an absolute value,
 9    yes, Your Honor.  I -- and, in part, it's hard for me to
10    avoid -- I guess I don't want to be categorical here and
11    say that if the Court determined that this treaty has a
12    plain meeting that is somehow inconsistent with the
13    intent of the United States, that the Court must apply
14    the plain meaning as opposed to what the United States'
15    executive opinion is, because treaty interpretation is
16    not the same as statutory interpretation.
17          THE COURT:  So what's the difference?  Where do
18    you see the difference?
19          MR. BERGMANN:  Well, the difference is in
20    connection with the liberality principle that was being
21    discussed --
22          THE COURT:  Right.
23          MR. BERGMANN:  -- that treaties are interpreted
24    broadly through the use of extrinsic materials because
25    they are frequently ambiguous, and they are devices

Matthew Christensen, et al. v. USA                    6/22/2022

1    essentially that help countries determine differences

2    between themselves, and they're often not models of

3    clarity.

4            THE COURT:  Just like statutes.

5            MR. BERGMANN:  Yes, but the difference is that --

6            THE COURT:  They're mediated results in the same

7    way.

8            MR. BERGMANN:  Yeah, although the Supreme Court

9    jurisprudence draws distinctions between the way that

10   one determines treaties and statutes, and, you know, in

11   present-day jurisprudence, as Your Honor and I, I think,

12   have both seen over the years, is moving more in the

13   direction of plain text and plain meaning

14   interpretations of statutes and is eschewing legislative

15   history and other interpretive tools that courts might

16   have been more willing to consider in the past.

17           THE COURT:  It depends on who you talk to.

18           MR. BERGMANN:  No, I understand that, but as one

19   who's briefed a number of these issues in front of a

20   number of the newer judges in this Court and others, I

21   have seen greater reluctance on behalf of courts to

22   apply interpretive tools to ascertain the intent of a

23   statute.

24           THE COURT:  But at the end of the day,

25   interpretive tools can be used if there's nothing else,

Matthew Christensen, et al. v. USA                    6/22/2022

```
 1    and even some of those people are going to use them,
 2    so --
 3              MR. BERGMANN:  I think that's true, yeah --
 4              THE COURT:  -- I mean, I think it's still a
 5    mixture.
 6              MR. BERGMANN:  But all I'm saying is that where
 7    statutory interpretation might be making somewhat of a
 8    left turn in jurisprudence, treaty interpretation is
 9    not, and it is actually probably taking more of a right
10    turn in terms of the willingness of courts to look at
11    tools outside of the plain text of a treaty in order to
12    determine --
13              THE COURT:  I've never been one to follow the
14    crowd, so that doesn't work so much.
15              MR. BERGMANN:  Well, perhaps I can get an E for
16    effort, although I don't want to --
17              THE COURT:  I think -- I mean, the bottom line is
18    it comes down to each individual case --
19              MR. BERGMANN:  Yes.
20              THE COURT:  -- and how it goes.  You know, all of
21    us probably have a predilection one way or the other,
22    but -- and some more reluctance to use interpretive
23    materials than others, but it has to come down to the
24    individual case.
25              MR. BERGMANN:  Yes.  And in this case in
```

Matthew Christensen, et al. v. USA                          6/22/2022

1    particular, Your Honor, the interpretive materials are
2    clear.  At least there is a U.S. Treasury explanation of
3    this treaty and the Treasury explanations of the model
4    treaties, which say this language, the general
5    principle, that just refers to the allowance of a
6    credit, not, broadly speaking, some concept that a
7    credit must be allowed against any tax or any United
8    States income tax under -- under the terms of the
9    treaty, and there is no -- so we have U.S. executive
10   materials that provide an interpretation of that.
11          We have no French materials that would provide a
12   contrary interpretation for that, and, in fact, the fact
13   that the U.S. treaty was then re-enacted with amendments
14   and the two protocols after the technical explanation
15   was published demonstrates or one could infer an
16   acquiescence in France from those -- the -- from the
17   enactment of those protocols, as I think the -- there's
18   an Adams case that we cited in our -- a Tax Court case
19   we cited in our papers that drew us to that conclusion.
20          One last thing on expectations and the extrinsic
21   authority point, Mr. Horwich in his argument said that
22   all extrinsic authority predates the net investment
23   income tax, and that is true in all cases but one.
24   There is actually one piece of extrinsic authority that
25   does post-date the enactment of the net investment

Matthew Christensen, et al. v. USA                                    6/22/2022

1    income tax, and that is the preamble to the U.S.
2    Treasury regulation that adopted rules in connection
3    with the application of the net investment income tax
4    and the preamble language stating that -- and, again,
5    published by the Treasury Secretary in the Federal
6    Register --
7              THE COURT:  And do you have a cite?
8              MR. BERGMANN:  Yes, Your Honor.
9              THE COURT:  I just want to -- I try to keep the
10   record pretty tight in a case that I -- not in --
11   actually, in all cases, but particularly when I know
12   there's going to be an appeal so that it's easily
13   perceived.
14             MR. BERGMANN:  Yes.  It's Treasury Regulation
15   Section 1.1411-1 --
16             THE COURT:  All right.  You are going way too --
17   1 --
18             MR. BERGMANN:  1.1411-1, and it is actually
19   the -- the preamble of the -- the preamble to those
20   regulations are in final regulations under 78 Federal
21   Register 72394-01, and that is cited on pages 30 to 31
22   of the Government's opening brief.
23             THE COURT:  Okay.  So let's talk a little bit
24   about regulatory interpretation.  Preambles are
25   different from the actual regulation portion.

Matthew Christensen, et al. v. USA                              6/22/2022

1            MR. BERGMANN:  They are.

2            THE COURT:  So does that weaken your argument to

3    some extent?

4            MR. BERGMANN:  Well, we are not arguing that this

5    is entitled to Chevron deference.

6            THE COURT:  Right.

7            MR. BERGMANN:  We are arguing that this is

8    entitled to great weight as an Executive Branch

9    interpretation of a treaty.

10           THE COURT:  Right.  I just want to make sure that

11   we're on the same page.

12           MR. BERGMANN:  Yes.

13           THE COURT:  Okay.

14           MR. BERGMANN:  And so this, I think, is as

15   authoritative or potentially even more authoritative

16   than the Treasury Department technical explanations

17   because this preamble was approved by the Treasury

18   Secretary for publication, and the preamble contains the

19   following language:

20           "If a United States income tax treaty contains

21   language similar to that in paragraph 2 of Article 23 of

22   the 2006 United States Model Income Tax Convention" --

23   and parenthetically, that's the same thing as Article 24

24   of the U.S.-France Income Tax Convention, if it does --

25   "which refers to the limitations of United States law,

Matthew Christensen, et al. v. USA                          6/22/2022

1    which includes Sections 27(a) and 901, then such treaty

2    would not provide an independent basis for a credit

3    against Section 1411 tax."

4          We respectfully submit that this is entitled to

5    great weight as an interpretation by the Executive

6    Branch of this particular treaty, and this

7    interpretation postdates the enactment of the net

8    investment income tax.

9          So I've discussed our response to the Plaintiffs'

10   reliance on the parenthetical.  Now the Plaintiff makes

11   an argument that all covered taxes under the treaty

12   should be the same as all credible taxes under the

13   treaty.  He essentially tries to conflate the two.  He

14   says that if it's a U.S. income tax, a credit must be

15   allowed against it.  Well, that is inconsistent with the

16   way the treaty was written.

17         The treaty provides in Article 24-1 for foreign

18   tax credits for U.S. tax against French tax, and Article

19   24-2 governs foreign tax credits against U.S. tax.  The

20   two are different, and they're not necessarily the same.

21         And so by its terms, Article 24-2 says "subject

22   to the limitations -- in accordance with the provisions

23   of and subject to the limitations of U.S. law."  It's

24   the Government's view that that incorporates all of the

25   provisions of the Internal Revenue Code that limit the

Matthew Christensen, et al. v. USA                          6/22/2022

1    application of foreign tax credits.

2           Article 24-1, which is the reverse, which is

3    credits for U.S. tax against French income tax, does not

4    contain similar language.  So by its terms, Article 24-1

5    does not require that the relevant U.S. tax must be

6    offset by foreign tax credits under the Code to be

7    creditable against the French income tax.

8           So while Mr. Horwich suggests that there should

9    be some reciprocity factor that the Court should apply

10   to make sure that the two are co-extensive with each

11   other, that's not something that France asked for when

12   it negotiated this treaty, and while Plaintiffs

13   correctly note that there are treaties where the United

14   States agreed with other countries to override

15   provisions of the U.S. Code -- the Denmark treaty, for

16   example -- they specifically here provide that foreign

17   taxes may be creditable contrary to the provisions of

18   the U.S. Code.  Those treaties did that explicitly.

19   This was a specific negotiated term between the United

20   States and the other countries.

21          And the fact that they did so in those treaties

22   and that there is no specific language here, I mean, the

23   contrast is telling.  The United States and France did

24   not negotiate a departure from the provisions of the

25   U.S. Code in this treaty.

Matthew Christensen, et al. v. USA                                    6/22/2022

```
 1              Finally, the Plaintiff argues that there is some
 2    broad purpose of the treaty to reduce double taxation
 3    and the Court must construe the treaty in order to do
 4    so; however, while the reduction or elimination of
 5    double taxation may be a general goal of the treaty, the
 6    treaty must be enforced as it's written, and as it's
 7    written, the tax credits are only allowed in accordance
 8    with the provisions of and subject to the limitations of
 9    United States law.
10              And as we explained in our reply brief, this and
11    many other treaties have multiple purposes, both the
12    reduction and elimination of double taxation, as well as
13    the prevention of fiscal evasion.  Those multiple
14    purposes frequently work at cross-purposes with each
15    other.  And so to suggest that the avoidance of double
16    taxation must trump all other potential purposes under
17    the treaty we believe is an overstatement of what the
18    parties had intended.
19              And there are numerous conditions and limitations
20    in the Code, all of which work against the policy
21    against double taxation, yet they are still enforced,
22    and Plaintiff does not suggest that they should not be
23    enforced.  They agree that they should be enforced.  So
24    to suggest that there is some -- that the Court should
25    go out of its way to construe the treaty in Plaintiffs'
```

1  favor because of this purpose we believe is incorrect,

2  and, in particular, as I earlier explained, would give

3  these particular Plaintiffs and others that are like

4  them a benefit that is beyond that that the United

5  States gives to its own taxpayers that live in the

6  United States.

7          With respect to the liberal construction

8  discussion, I will only add that while the liberal

9  construction in recent Supreme Court jurisprudence only

10 means that courts should consider broad interpretive

11 tools when they construe treaties, not necessarily that

12 treaties should always be construed in favor of the

13 most -- of granting the most benefits to one party or

14 the other, and the Fifth Circuit opinion that we

15 referenced in the Kreinerman case, cited on pages 9 to

16 10 of our reply, I think makes this clear.  And also,

17 it's even more so in tax treaties, again, where we are

18 talking about constraining the sovereign power of the

19 United States to impose tax.

20         Again, we would respectfully suggest that

21 separation of powers concerns are at issue and that for

22 that reason this Court and other courts should construe

23 ambiguous language in tax treaties narrowly in the

24 Government's favor, leaving, of course, the other

25 contracting party -- putting them in a position to

Matthew Christensen, et al. v. USA                                6/22/2022

```
 1    pursue relief with the United States through various
 2    means if they would choose to do so.
 3            THE COURT:  Why does that operate differently
 4    with tax issues than it does with any other issue which
 5    the United States has the sovereign power to do?
 6            MR. BERGMANN:  I think because tax is a core
 7    sovereign power of the Government, whereas others might
 8    not be.  I think in our reply brief we cited some -- I
 9    guess some "golden oldies" for lack of a better word,
10    Supreme Court cases for that proposition.
11            THE COURT:  Yeah, I saw it in your brief, and I
12    kind of raised an eyebrow then a little bit, but --
13            MR. BERGMANN:  Well, frequently I can find good
14    authority if I go back to 1888, and actually, when
15    you're briefing sovereign -- sovereign cases --
16            THE COURT:  You can go back pretty far, yes.
17            MR. BERGMANN:  -- there is good U.S. Supreme
18    Court authorities from the 1860s to 1880s that really
19    talk about the importance of taxation as part of the
20    Government's sovereign powers.
21            THE COURT:  Right.
22            MR. BERGMANN:  Mr. Horwich did not discuss his
23    second argument, which involves Article 24-2(b) in his
24    argument.  I'm perfectly happy to stand on our briefs in
25    connection with that argument unless the Court had any
```

Matthew Christensen, et al. v. USA                          6/22/2022

```
 1    questions about it.  This is the provision of the Code
 2    that follows the one that we -- not of the Code, of the
 3    treaty that follows the one we have just been
 4    discussing.
 5             THE COURT:  Right.
 6             MR. BERGMANN:  And as we explained in our briefs,
 7    both our opening brief and our reply brief, that Article
 8    24-2(b) is part of an ordering rule established by the
 9    treaty, and it implements the three-bite rule, and it
10    does not create an independent tax -- an independent tax
11    credit separate and apart from the tax -- anything that
12    would be allowed under Article 24-2(a).  The two have to
13    be read in context with each other.
14             THE COURT:  When you say 2, the (a) and (b)?
15             MR. BERGMANN:  (a) and (b), yes.
16             THE COURT:  Yeah.
17             MR. BERGMANN:  And this one -- I'll be glad to
18    discuss it more, and if Mr. Horwich wants to argue about
19    it, perhaps I can come back and talk about it more, but
20    I will say this is a big one for the Government.  If the
21    Court were to construe that 24-2(b) created some
22    independent right to a foreign tax credit that was
23    unmoored from the provisions of the Internal Revenue
24    Code, then that would essentially allow taxpayers
25    everywhere in every country where a similar provision
```

Matthew Christensen, et al. v. USA                          6/22/2022

1    exists to claim foreign tax credits that are not limited

2    by the cross-credit limitations under the Code, by

3    Section 904, by Section 911.  We believe that that

4    result would be just so far out of the norm that it's

5    unsupportable in law, but, again --

6           THE COURT:  How important to a Plaintiff's

7    success in this case is -- do you perceive the

8    disengagement of (a) and (b) argument to be?

9           MR. BERGMANN:  I'm not sure what --

10          THE COURT:  Without that disengagement of (a) and

11   (b), can the Plaintiff win?

12          MR. BERGMANN:  Without the disengagement, can --

13   I'm confused by Your Honor's question.

14          THE COURT:  Well, you've said it's -- you don't

15   think -- you think they have to be read together.

16          MR. BERGMANN:  Yes.

17          THE COURT:  If they were not to be read together,

18   can the Plaintiff succeed?

19          MR. BERGMANN:  If they were not to be read

20   together, then the -- that provision might literally

21   provide for a foreign tax credit against the net

22   investment income tax and any other tax that is

23   completely unlimited by any provisions of the United

24   States Code.

25          THE COURT:  No, I understand that part of your

Matthew Christensen, et al. v. USA                                6/22/2022

    1   argument.

    2              MR. BERGMANN:  Yes, we would -- even in that case

    3   we would argue that it is -- that that is so contrary to

    4   the technical explanations, both to this treaty and to

    5   the model treaties, and it is also -- would render -- I

    6   mean, would render surplusage the -- the reference in

    7   Article 24-2(b) to the Section 904 limitations and, in

    8   particular, to the re-sourcing of U.S. income to French

    9   income, that it -- and that -- we would still argue that

   10   those would compel the Court to conclude that no foreign

   11   tax credit should be allowed under that provision.

   12              But, again, it's hard for me to -- some of those

   13   are arguments that are reasons why the Court should have

   14   to read them together, and so I'm -- Your Honor is

   15   hypothesizing a scenario where you're going halfway down

   16   a road and -- a road that we don't think it would be

   17   appropriate for the Court to go down and --

   18              THE COURT:  I understand that.

   19              MR. BERGMANN:  Yes.

   20              THE COURT:  I understand that it's a very

   21   important argument for the Government.

   22              MR. BERGMANN:  Yes.

   23              THE COURT:  But my question still is, can

   24   Plaintiff succeed if the two are not read together or is

   25   it so endemic to Plaintiffs' argument from your

```
 1   perspective that they -- in order to succeed in the case
 2   currently in the Court, the two would have to be read
 3   together?
 4              MR. BERGMANN:  Oh, okay.  I got it backwards.
 5              THE COURT:  You got it backwards, but it was
 6   actually a helpful explanation.
 7              MR. BERGMANN:  Yes, yes.  Plaintiff can prevail
 8   under Article 24-2(a) without prevailing under Article
 9   24-2(b), Your Honor.
10              THE COURT:  That's the question.
11              MR. BERGMANN:  Yes.  Sorry I got it confused.
12              THE COURT:  It actually worked out fine.  It made
13   me think about some other things, so that's good.
14              MR. BERGMANN:  I have nothing more to add unless
15   Your Honor has any questions.
16              THE COURT:  Let me just look here for a moment.
17              Do we have any clues to the aim of the French
18   treaty or -- and also, a subset of that question -- is
19   the process that was described earlier of getting a
20   French interpretation permissive or mandatory?
21              MR. BERGMANN:  I think it's permissive.
22              THE COURT:  Permissive.  I think it is, yes.
23              MR. BERGMANN:  As far as the purpose of the
24   U.S.-French treaty, like all tax treaties, its broad
25   purpose is to facilitate commerce between the United
```

Matthew Christensen, et al. v. USA                    6/22/2022

1    States and France; to provide provisions for the

2    resolution of disputes between the two countries

3    regarding the application of their tax laws; to provide

4    terms to help avoid fiscal evasion; and to assist in the

5    reduction or elimination of double taxation.

6           Those purposes, I think, are stated in the

7    technical explanations, they are stated in the Senate

8    executive reports when the treaty and the protocols were

9    enacted, and those, I think, are, generally speaking, a

10   number of broad purposes of those -- of the treaty.

11          THE COURT:  Okay.  But nothing from France?

12          MR. BERGMANN:  There's nothing in the record

13   about what France thinks about this treaty.

14          THE COURT:  Does it exist?

15          MR. BERGMANN:  I --

16          THE COURT:  You have obviously done your

17   research, so --

18          MR. BERGMANN:  I haven't found -- I mean, I -- I

19   don't speak French, and so it's hard for me -- it would

20   be hard for me to find French stuff myself, although I

21   did not find any U.S. translations of French materials.

22   There's nothing -- nothing obviously showed up when I

23   did my legal research, Your Honor.

24          THE COURT:  Okay, all right.

25          Very good.  Thank you.

Matthew Christensen, et al. v. USA                          6/22/2022

1          MR. BERGMANN:  Thank you, Your Honor.

2          THE COURT:  Mr. Horwich, any reply?  Please don't

3    repeat the arguments you made earlier, but just use this

4    as an opportunity to reply to the Defendant's arguments.

5          MR. HORWICH:  Thank you, Your Honor.

6          Starting off with the statement that a U.S.

7    resident taxpayer would be worse off than a French

8    resident U.S. taxpayer, I don't understand it, and I

9    don't understand it simply because a French resident

10   taxpayer is going to be paying more than 20 percent tax

11   or we're not going to be here.

12         In other words, a French resident taxpayer, and

13   the Plaintiffs in this case, paid 30 percent tax to

14   France.  If they had only paid 20 percent, we wouldn't

15   be having this case.  By definition, the only time this

16   is going to arise is when a French -- when a French tax

17   is greater than the normal income tax, the Chapter 1

18   tax.  It has to start to eat into the NIIT before we are

19   going to be in a position for a tax credit, and only

20   after it goes to the total of the NIIT would we get a

21   full reduction of U.S. tax.

22         So, in other words, in extremely simple terms,

23   and how I would explain this to any client of mine, the

24   U.S. tax is always the baseline.  You're never going to

25   do better than that.  If you wind up -- you are always

Matthew Christensen, et al. v. USA                          6/22/2022

1     going to pay 23.8 percent tax, minimum, on this.  If you
2     wind up paying 25 percent French tax, then it would be
3     jolly nice if you didn't pay any U.S. tax, but what the
4     Government says is, no, you have to pay 28.8 rather than
5     25.
6            A U.S. situated taxpayer would only pay 28.8.
7     There is no situation ever, under any circumstance,
8     where a U.S. resident person taxpayer is worse off than
9     a French resident taxpayer.  It makes no sense to argue
10    it under those circumstances.
11           With respect to the statement that the
12    parenthetical in the treaty stops the U.S. Government
13    from repealing the foreign tax credit rules, that an
14    outright repeal is not allowed, I'm sorry, but if
15    Congress tomorrow decided to repeal the U.S. foreign tax
16    credit system, it would repeal the U.S. tax credit
17    system.  The treaty is not going to stop Congress from
18    doing what it wants to do in the future.
19           If it does that, we don't have a foreign tax
20    credit system, but this parenthetical is not there to
21    say, Congress, you have restricted your right to be able
22    to do it.  Again, it's a non sequitur.
23           With respect to Article 3, paragraph 2, Article
24    3, paragraph 2 is a very sort of normal provision
25    because -- in a treaty, and what it gets at is a simple

1  problem, and it -- and an easy example is a good

2  example.  Let us assume, for sake of argument, that a

3  taxpayer enters into, let's say, an option arrangement

4  where it agrees to sell property, receives a significant

5  premium.  So I would like to sell you my piece of land.

6  Here is 30, you give me 30, and you'll pay me 70 -- you

7  have the option to pay me 70 next year.  Does that

8  trigger a gain?

9          Under U.S. principles, yes, it would, because the

10  benefits and burdens have shifted.  That is what

11  triggers a gain.  Under French circumstances, it would

12  not.  This happens all the time.  What is interest?

13  What is gain?  What is residency?  You have -- what is a

14  dividend?  France will consider a dividend a dividend if

15  it's a payment under corporate law.  The United States

16  will look to see whether there's earnings and profits.

17          Countries have rules as to when taxes happen.

18  That is what Article 3, paragraph 2, is designed to do.

19  It is certainly not designed to create a situation where

20  each country can, in derogation of the treaty, say we

21  have a sovereign right to do what we want.  Indeed,

22  Article 3, paragraph 2, comes into play here in a couple

23  of contexts.

24          When we talk about limitations, Code Section 904

25  says "Limitation on Credit," and United States income

1   tax -- and this is something segueing on to the next

2   point -- it's absolutely clear that Article 24-1 on the

3   French side and Article 24-2 on the U.S. side are not

4   parallel.  The reason they're not parallel is because

5   normally, most times -- not always -- but French law

6   usually exempts U.S. source income received by U.S.

7   citizens.  There isn't a credit.

8            It's a very elaborate -- 24-1 is a very elaborate

9   provision expected to be based on the fact that France

10  does not tax U.S. source income received by a U.S.

11  citizen other than in certain circumstances.  So this

12  treaty carves out and says sometimes we are going to

13  give a credit when under domestic law we do; other times

14  we are going to exempt.

15           And as a further nuance in the way the French

16  Government works, French tax works, if you have exempt

17  income, what the French Government does is it says you

18  have to include that income in your tax base.  A simple

19  world.  If we had 100 of capital gain, U.S. source gain

20  or U.S. source interest -- interest is probably an

21  easier example -- and had 50 of other income, in France,

22  what they do is they would say let's look at how much

23  tax is on 150, and we'll give you a credit for a 100 --

24  150.  In other words, we are going to push you up the

25  brackets.  It may very well be that this income is

Matthew Christensen, et al. v. USA                    6/22/2022

1    exempt, but we are going to -- in a situation such as

2    that, we are going to make you have to pay more tax than

3    you would have if you had only had 50 of income.  We are

4    going to do the difference between 100 and 150.  That's

5    what Article 24-1 does.

6         Of course, they are, therefore, going to be

7    different, but what is the term "United States income

8    tax"?  Again, United States income tax is better

9    understood as Chapter 1 plus Chapter 2(a).  I don't

10   think the parties disagree about that.  We have a term.

11   It's not specifically defined.  You can get there

12   through Article 2-1 and Article 2-2, but it's defined as

13   United States income tax.

14        Indeed, why is the French treaty, when it talks

15   about the French income tax, which is specifically

16   defined in Article 24-2(d), why does it do that?

17   Because it can't use the Article 2 definition of French

18   income tax, because although there are a couple of taxes

19   which the United States would be willing to allow for a

20   credit, the normal income tax in France and the normal

21   corporate tax, they are not allowing to other listed

22   taxes in the treaty as a credit.

23        They are not allowing the self-employment tax,

24   and they're not allowing -- so the United States will

25   not allow for a credit for self-employment tax, which is

1    an income tax under French tax principles, and they are
2    not allowing for net wealth tax.  So, again, it is
3    not -- there are reasons why they are based in the
4    treaty the way they are.
5          The MAP provision, the mutual assistance
6    provision that, as you said, is certainly not a
7    mandatory provision, and in light of the number of scars
8    I had on my back on the Eshel case, there is no way I
9    would go into a MAP proceeding in which the United
10   States and France do not need to come to a resolution,
11   and France has -- you know, France will do whatever
12   France will do on something like that, but it is
13   unlikely the French Government is going to go out of its
14   way.  If they wouldn't do it on CSG and CRVS, which was
15   seriously costing them money, this is not the right
16   place for this kind of procedure and certainly not going
17   to get us to what they would be due.
18         In terms of the preamble to the Treasury
19   regulation, I think it's quite clear what the
20   Government's position is in this case.  It feels like if
21   we have a situation where the French Government is
22   not at -- would not be making a formal -- that there
23   hasn't been a pre -- there has not been a protocol to
24   the treaty, the United States never notified the French
25   Government of the new tax, it seems that we are

Matthew Christensen, et al. v. USA                          6/22/2022

1    bootstrapping ourselves here and saying that this is

2    somehow or another more dispositive than simply what we

3    clearly all know, and that's that the Government has a

4    position, and that position is entitled to great

5    deference, but there are other provisions that also

6    are -- there's other jurisprudence involved as well, and

7    liberal interpretation is one of them, and there is

8    ample case law where the courts do not simply follow the

9    United States Government's position.

10        THE COURT:  What would you say is the fall-back?

11   Assuming that the deference has limitations, which it

12   does, is it the treaty language?  It's the same question

13   I asked Mr. Bergmann.  Is it the treaty language that

14   you have to rely on if you don't give deference or

15   automatic deference to that technical interpretation?

16        MR. HORWICH:  It is the -- I believe that you

17   would also -- the intent or the expectations of the

18   parties --

19        THE COURT:  But the treaty language, as expressed

20   in the treaty language.

21        MR. HORWICH:  As expressed in the treaty language

22   in light of the treaty's purpose.

23        THE COURT:  In light of the treaty's what?

24        MR. HORWICH:  In light of the purpose of the

25   treaty I believe is the --

Matthew Christensen, et al. v. USA                    6/22/2022

```
 1            THE COURT:  But as expressed in the language of
 2    the treaty?
 3            MR. HORWICH:  Exactly, so --
 4            THE COURT:  So it's the treaty document versus
 5    the technical interpretation or even this additional
 6    citation that Mr. Bergmann gave us afterwards.  What
 7    about that, the one document or rule that he cited after
 8    the NIIT?
 9            MR. HORWICH:  After the NIIT, we have not had --
10    the French Government has never responded to that.
11    There has not been a response.  A requirement, I
12    believe, that this preamble to the Treasury regulation
13    is simply a statement of why we are here, which is that
14    the Government has taken a position of what the treaty
15    language means, which is directly creating a double
16    taxation situation.
17            THE COURT:  So the argument on that -- and I was
18    going to ask you a question about this anyway -- but the
19    argument on that rule or the preamble to the rule is
20    that, from your perspective, because the French
21    Government has not responded to it, it has less
22    significance, or how would you state it?  It's a
23    one-sided interpretation, in other words?
24            MR. HORWICH:  It's a one-sided interpretation.
25    There is no shared expectation based on what the
```

Matthew Christensen, et al. v. USA                      6/22/2022

1     Government has said.

2            THE COURT:  Okay.

3            MR. HORWICH:  I think the final point that I --

4     well, I'm perfectly happy to, and we made a calculated

5     decision that I believe the parties have properly

6     briefed 24-2(b).

7            THE COURT:  Well, how would you respond to

8     Mr. Bergmann's argument?

9            MR. HORWICH:  As we had stated in our brief, the

10    language of 24-2(b) is quite clear in that it is

11    limited, and I will read you the 24-2(b) language.

12           "The United States shall allow a credit against

13    the United States income tax" -- okay, so we are now in

14    the United States income tax -- "the French income tax

15    paid following the two-bite rule."

16           All this is saying is that when the -- it is

17    specifically limited, that what it is saying here is

18    that each tax -- the United States will allow a credit

19    against the French income tax that's paid, and it

20    specifically does not have the "in accordance with"

21    language.

22           There is no -- the -- there is a requirement that

23    it is French income tax, so, therefore, defined in the

24    treaty.  There is a requirement that it is United States

25    income tax, which is through Article 2 -- I'm sorry,

Matthew Christensen, et al. v. USA                                6/22/2022

```
 1    Article 2-1 and 2-2, defined in the treaty.  There is
 2    not a parade of horribles here.
 3              If it's U.S. source income on which this is going
 4    on, this coverage, under the three-bite rule, is
 5    foreign.  There is no issue that we see that is creating
 6    a problem reading this separately.
 7              THE COURT:  Okay.  Anything else?
 8              MR. HORWICH:  I think I am finished.
 9              THE COURT:  Let me just look at my notes for a
10    moment.
11              All right.  I thank you, both.  I am reminded
12    that you are going to get that document, the French tax
13    return, by Tuesday, correct?
14              MR. HORWICH:  That is correct.
15              THE COURT:  Is that what you were asking?
16              LAW CLERK:  Do you want a response from the
17    Government once that document is --
18              THE COURT:  Just ask the question.
19              LAW CLERK:  Did you want a response from the
20    Government once that document is produced?
21              THE COURT:  The tax return?
22              LAW CLERK:  Mr. Bergmann asked for that document
23    as part of the proof in the case.  Do we need a response
24    when that is filed?
25              THE COURT:  Oh, I see what you're saying, okay.
```

1    It's always helpful to have a Law Clerk that's as smart
2    as you are.
3           I guess the question is, once you get the French
4    tax return on Tuesday, how do you see what you need to
5    do with it to see if it's sufficient for your purposes
6    for a calculation?  Right now I'm operating on a request
7    for $3,851.  Do you need two weeks?  Do you need three
8    weeks to figure this out?
9           MR. BERGMANN:  Well, I will need to provide it to
10   the people that know how to read it at the Service, and
11   then I'll -- if there are any deficiencies in it, what I
12   would do is just reach out to Mr. Horwich and attempt to
13   negotiate with him.
14          THE COURT:  Right.  But what I need to know is a
15   time that you can get back to us.  You can have more
16   time.  I'm just saying, how much time do you need in
17   theory -- although it is manageable with a request for
18   additional time -- how much time should we put on it at
19   this point?
20          MR. BERGMANN:  Yes, yes.  Unfortunately -- the
21   answer to that question, unfortunately --
22          THE COURT:  It is the IRS.  I get that.
23          MR. BERGMANN:  No, it's not the IRS that's the
24   issue, Your Honor.  It's me.  I have a very liberal
25   vacation schedule planned this summer for the first time

Matthew Christensen, et al. v. USA                          6/22/2022

```
 1    in a while.  My family and I are going away for three
 2    weeks in July and early August, and so to the extent
 3    that the Service is able to get back to me, if they do
 4    it, say, by July the 15th, I won't necessarily
 5    personally be in a position to do anything with it --
 6            THE COURT:  So when are you leaving?
 7            We can go off the record here for a moment.
 8            (Discussion off the record.)
 9            THE COURT:  I was going to say, why don't we
10    get -- we are going to need some time to write this up
11    anyway, so it's really not going to impinge on what
12    we're doing.  Why don't you -- when is Labor Day?  Labor
13    Day is the 5th.  I want to give you a couple weeks to
14    digest it when you come back, assuming you do get it
15    back, but let's say that you get back to us by September
16    7th with an answer one way or the other.  File something
17    that says yea or nay.
18            MR. BERGMANN:  Okay.
19            THE COURT:  If you're able to do it earlier,
20    there's nothing stopping you from filing it earlier.
21            MR. BERGMANN:  Yes.
22            THE COURT:  So we will do it that way.
23            MR. BERGMANN:  Thank you.
24            THE COURT:  All right.
25            With that, I really want to thank you both for
```

Matthew Christensen, et al. v. USA                        6/22/2022

1    very competent briefing, very competent arguments.  This

2    is a complicated case in the sense of it's a lot of

3    different areas of tax law that we're going to dive into

4    and a lot of policy arguments that were presented.  You

5    each think it's pretty simple, but we have to digest

6    both of your pretty simple arguments, and they don't

7    necessarily agree.

8            So we'll take a look at it, and we'll start --

9    we'll start working on it, but, you know, we'll get you

10   an opinion as quickly as we can, understanding more than

11   the complexity of it, actually, the gravity of it in

12   terms of the implications.  So I thank you, both.

13           I do want to -- you can sit down for moment.  I

14   have one thing.  We're off the record now.

15           (Whereupon, at 12:59 p.m., the proceedings were

16   adjourned.)

17

18

19

20

21

22

23

24

25

82

Matthew Christensen, et al. v. USA                          6/22/2022

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3

 4          I, Susanne Bergling, court-approved transcriber,

 5     certify that the foregoing is a correct transcription

 6     from the official digital sound recording of the

 7     proceedings in the above-titled matter.

 8

 9

10

11

12     DATED:  7/18/2022              s/Susanne Bergling

13                                    SUSANNE BERGLING, RMR-CRR

14

15

16

17

18

19

20

21

22

23

24

25
```