IN THE UNITED STATES COURT OF FEDERAL CLAIMS

———————

No. 20-935 T

(Judge Marian Blank Horn)

MATTHEW and KATHERINE KAESS CHRISTENSEN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant

———————

PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF

———————

January 24, 2023                      /s/ Stuart E. Horwich
                                                    Horwich Law LLP
                                                    20 Old Bailey, 5th Floor
                                                    London  EC4M 7AD
                                                    011 44 20 8057 8013
                                                    seh@horwichlaw.com
                                                    Counsel for the Plaintiff

i

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

I.     **The Defendant Errs by Confusing Treaty-Based Foreign Tax Credits with Statutory Foreign Tax Credits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3**

II.    **The Provisions of the French Treaty Allowing a Foreign Tax Credit are Not in Conflict with the Statutory Provisions that Do Not Allow a Foreign Tax Credit. . . . 4**

III.   **Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7**

## TABLE OF AUTHORITIES

### Constitution of the United States

Article VI, Paragraph 2 (Supremacy Clause) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 5, 6

### Case Law

*Whitney v. Robertson*, 124 U.S. 190 (1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6
*Toulouse v. Comm'r*, 157 T.C. 49 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4

### Treaties

*Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital*, Fr.-U.S., Aug. 31, 1994, 1963 U.N.T.S. 67, as supplemented by Protocols dated Dec. 8, 2004 and Jan. 13, 2009 . . . . . . . . . . . . . . . . . .2, 3, 4, 7

*Convention between the Government of the United States of America and the Government of the Republic of Croatia for the Avoidance of Double Taxation and the Prevention of Tax Evasion with Respect to Taxes on Income,* https://home.treasury.gov/system/files/131/Treaty-Croatia-12-7-2022.pdf  (December 8, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

### Statutes

2 U.S.C. (Organization of Congress)
      Section 644 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Internal Revenue Code (26 U.S.C.)
      Code Section 1411 (the "NIIT"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 5, 7
      Code Section 6511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
      Code Section 7422. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
      Code Section 7852 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6 ,7

28 U.S.C. (Judiciary and Judicial Procedure):
      Section 1502. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

### Other Taxation Materials

Treasury Decision 9644, 78 FR 72393-72449, December 2, 2013, as corrected by 79 FR 18161, April 1, 2014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

H.R. Rep. 100-1104 (Conf. Rep. ), 100th Cong., 2d Sess. (Oct. 21, 1988) to accompany H.R. 4333 (Technical Corrections Act of 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

ARGUMENT

On October 12, 2022, the Court ordered the parties to file supplemental briefs discussing (i) whether the Court is deprived of jurisdiction over this case pursuant to 28 U.S.C. § 1502 (2018); (ii) the impact of the intent of Congress in codifying the net investment income tax (the "NIIT") in Chapter 2A of the Internal Revenue Code of 1986 (26 U.S.C. – the "Code") rather than in Chapter 1; and (iii) standards for determining when a federal statute and a treaty come into conflict, and, when such conflict exists, the standards by which to determine when one prevails over the other.

In the Plaintiffs' opening supplemental brief (Dkt. 52), the Plaintiffs answered that the Court has jurisdiction pursuant to Code Sec. 7422(f) and the Defendant has agreed. (Def. Supp. Br. at 1-2.) With respect to the Court's second question, the Plaintiffs showed that although no statutory foreign tax credit is available as a result of placing the NIIT in Chapter 2A, no inference could be drawn regarding any Congressional intent to disallow a foreign tax credit under applicable treaty provisions. With respect to the third question, the Plaintiffs pointed out that no court has comprehensively addressed the standards for when a conflict exists between a statute and a treaty. Nevertheless, it is clear that under applicable Supreme Court and Federal Circuit precedents, a treaty and a later enacted statute do not conflict when the two provisions can be harmonized by giving effect to both without violating the language of either, which is readily achieved in the instant case.

The Defendant's response to the second question confuses the concept of a statutory foreign tax credit and a treaty-based foreign tax credit. The Defendant makes the point that because the NIIT is codified in a separate Chapter 2A, no statutory foreign tax credit is allowed – a point that is not, and never has been, in dispute. The Defendant then concludes, based on its

1

mistaken reading of the language contained in Article 24(2)(a) of the French Treaty,[1] that the French Treaty does not provide for a treaty-based foreign tax credit.  The Plaintiffs fundamentally disagree with the Defendant's conclusion and the issue has been thoroughly briefed by the parties.  At no point does the Defendant demonstrate any Congressional intent to repeal treaty-based foreign tax credits by the enactment of the NIIT in Chapter 2A.

With respect to the third question, the Defendant appears to agree with the Plaintiffs that a treaty and a later enacted statute should be harmonized where possible.  However, the Defendant goes on to make the remarkable claim, based on a flawed reading of an amendment to Code Sec. 7852(d), that two hundred years of Supreme Court and Federal Circuit precedent setting forth the standards for reconciling inconsistent treaty and statutory provisions are not relevant to the case at bar.  The Defendant then compounds this error by constructing a dubious theory that harmonization is not possible in revenue cases whenever a treaty provides benefits that are not present in a later enacted statute.  The Defendant fails to grasp that, pursuant to the Supremacy Clause of the Constitution (Article VI, paragraph 2), a treaty is a law of the land just like and equal to a statute and that a fundamental purpose of a tax treaty is to provide benefits that are not otherwise available under domestic law.  By their very nature, treaties will often be inconsistent with statutes; harmonization of those provisions is readily possible once one accepts that treaties create reciprocal benefits and obligations that are not found in statutory rules.

---

[1] *Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Income and Capital*, Fr.-U.S., Aug. 31, 1994, 1963 U.N.T.S. 67, as supplemented by Protocols dated Dec. 8, 2004 and Jan. 13, 2009.

I.      **The Defendant Errs by Confusing Treaty-Based Foreign Tax Credits with Statutory Foreign Tax Credits**

The Defendant cites numerous authorities to the effect that Congress's enactment of the NIIT in a new Chapter 2A of the Code demonstrates that Congress intended that no statutory foreign tax credit be allowed to offset the NIIT. (Def Supp. Br. pp. 2-4.) This has never been in dispute – the Plaintiffs have always acknowledged that no such statutory foreign tax credit is available. However, codifying the NIIT in Chapter 2A did not show any Congressional intent to disallow a treaty-based foreign tax credit, as evidenced by the Treasury Department's Decision that separate analysis of each treaty is required to determine if a treaty-based foreign tax credit is allowed.[2] The Code recognizes the distinction between a statutory foreign tax credit and an independent treaty-based foreign tax credit. *See*, *e.g.*, Code Sec. 6511(d)(3).

As the parties agree, placing the NIIT in Chapter 2A had the effect of making the NIIT a covered tax under Article 2 of the French Treaty. (Def Opening Br. at p. 21 n.14, Dkt. 33(1).) As a covered tax, the NIIT falls within the scope of Article 24(2)(a) of the French Treaty, which provides for a treaty-based foreign tax credit. By placing the NIIT within Title 26 (the Internal Revenue Code) but in a separate Chapter 2A, Congress steered a middle ground in which a statutory foreign tax credit would not be allowed but a treaty-based credit would be available.

The Defendant does not offer any rebuttal to the explanation of this distinction. Instead, the Defendant, quoting the unsound decision in *Toulouse v. Comm'r*, 157 T.C. 49, 57 (2021),

---

[2]      The Treasury Department already has indicated, "[a]n analysis of each United States income tax treaty would be required to determine whether the United States would have an obligation under that treaty to provide a credit against the section 1411 tax for foreign income taxes paid to the other country." Treasury Decision 9644, 78 FR 72393-72449 (Dec. 2, 2013), as corrected by 79 FR 18161 (Apr. 1, 2014). Such analysis would not be required in the event that Congress intended that no treaty-based foreign tax credits are allowable.

restates its position in its initial briefs that a treaty-based foreign tax credit "must be determined in accordance with the Code and is limited by the Code's provision of a credit." The Defendant's position, however, ignores the parenthetical language of Article 24(2)(a) of the French Treaty providing that the general principle of allowing a foreign tax credit must be maintained, which here means that, in the absence of a statutory credit, a treaty-based foreign tax credit should be allowed.³  Instead, the Defendant erroneously concludes, as did the Tax Court, that because "the Code does not provide for foreign tax credits against the NIIT, there can be 'no independent, treaty-based credit' * * *." *See, Toulouse*, *supra* at 61-62.  This conclusion effectively repeats, and indeed compounds, the flawed analysis of the text of the French Treaty in the Defendant's answer to the question posed by the Court: "the impact of Congress's intent in codifying the NIIT in Chapter 2A of the [Code]".

## II.   The Provisions of the French Treaty Allowing a Foreign Tax Credit are Not in Conflict with the Statutory Provisions that Do Not Allow a Foreign Tax Credit

The Court requested that the parties brief the question of "the standards for determining when a federal statute and a treaty come into conflict, and, when such a conflict exists, the

---

³   The recently signed tax treaty between the United States and Croatia highlights the significance of the wording of the French Treaty. *See* Convention between the Government of the United States of America and the Government of the Republic of Croatia for the Avoidance of Double Taxation and the Prevention of Tax Evasion with Respect to Taxes on Income, https://home.treasury.gov/system/files/131/Treaty-Croatia-12-7-2022.pdf  (December 8, 2022 – the "Croatia Treaty").  In the Croatia Treaty, the foreign tax credit article (Article 23(2)) provides that the United States shall allow a foreign tax credit "to the extent allowed under the law of the United States (as it may be amended from time to time)" rather than the wording in the French Treaty that a credit shall be allowed "[i]n accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof)".  The Croatia Treaty's language specifically limiting the foreign tax credit article to what is allowed under "the law of the United States" absent the "without changing the general principle hereof" language found in the French Treaty, demonstrates that when the treaty parties intend that a treaty-based foreign tax credit will not be allowed, they are perfectly capable of drafting accordingly.

4

standard by which to determine when one prevails over the other." (Dkt. 50 at 2.)  The parties agree that a statute and a treaty may conflict only when the "courts are not able to 'construe them to give effect to both' without 'violating the language of either.'"  Def. Supp. Br. at 6, *quoting*, *Whitney v. Robertson*, 124 U.S. 190, 194 (1888).  This statement is based on the Supremacy Clause, which provides that treaties and statutes have the same constitutional status as the supreme law of the land and focuses on whether seemingly inconsistent statutory and treaty provisions can be harmonized (easily achieved in this case).  Furthermore, in numerous Supreme Court and Federal Circuit cases cited by the Plaintiffs in their Supplemental Brief, the Plaintiffs pointed out that courts strongly resist allowing a later enacted statute to repeal an earlier treaty absent clear Congressional intent to that effect.  (Pl. Supp. Br. pp. 10-12.)

The Defendant challenges these judicial precedents in two ways.  First, the Defendant argues that it is not possible to have an explicit Congressional statement repealing a treaty provision within a revenue statute, such as the NIIT, that was enacted through the budget reconciliation provisions.  The Defendant concludes that "any failure by Congress to expressly prioritize a Code provision of any treaty would not be probative of Congressional intent in such a case." (Def. Supp. Br. at n.3.)  This is an incorrect statement of the law – a three-fifths majority would suffice to have a treaty provision repealed in a reconciliation statute.[4]  Yet, the Defendant

---

[4]    Budget reconciliation acts are governed by statutorily mandated procedures contained in 2 U.S.C. Sec. 644.  Under the so-called "Byrd amendment" to these procedures, a provision is deemed "extraneous" and, therefore subject to a point of order objection requiring three-fifths majority vote to proceed, if the provision is not within the appropriate committee's jurisdiction to review the legislation. 2 U.S.C. Sec. 644(b)(1)(C).  The Senate Foreign Relations Committee would have jurisdiction over a treaty provision and, therefore, any treaty provision would have had to have been proposed by that committee (and not the Senate Budget Committee that proposed the NIIT legislation) or been subject to a point of order objection requiring a three-fifths majority to remain in the reconciliation legislation.

has pointed to no legislative history or any other source showing either that Congress intended to override a treaty or that a three-fifths majority was available to legislate such intent. Instead, the Defendant makes an astounding request for this Court to find clear Congressional intent in a vacuum and to override a treaty when Congress failed to do so.

The Defendant also argues that the Supreme Court and Federal Circuit authority cited by the Plaintiffs – that an intention to repeal a treaty must be clearly expressed and that repeal by implication is not favored – no longer applies to revenue cases as a result of Congress's amendment to Code Section 7852(d) in 1988.[5] The amendment to Code Sec. 7852(d) does nothing of the sort. The amendment provides that neither a treaty nor the Code has preferential status over the other, which is a restatement of the language of the Supremacy Clause as interpreted by the Supreme Court.[6] Congress did not, by amending Code Sec. 7852(d), modify the Supremacy Clause (which would of course have been beyond its power) and the two hundred years of judicial precedent interpreting the Supremacy Clause was not altered by the Code Sec. 7852(d) amendment. Treaties and statutes are of equal status and a repeal of a treaty by implication is not favored, a proposition that is equally true whether the treaties cover revenue or other matters. Indeed, the Conference Report confirms this conclusion, stating that the amendment to Code Sec. 7852(d) "adds no operative rules to be applied in determining the

---

[5]  Code Sec. 7852(d) provides that "[f]or purposes of determining the provision of a treaty and any law of the United States affecting revenue, neither the treaty nor the law shall have preferential status by reason of it being a treaty or law." This echoes the language of the Supremacy Clause that "Laws of the United States" and "all Treaties made * * * shall be the supreme Law of the Land."

[6]  *Whitney v. Robertson*, *supra*, 124 U.S. at 194 ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other.")

relation of the Code (or other tax law) and a treaty, but rather states the constitutional principle that such determinations are relevant in determining tax liabilities." H.R. Rep. 100-1104 1988) (Conf. Rep.), p. 12.  *See* Exhibit 1.

In any event, the Defendant's argument as to the meaning of Code Section 7852(d) fails. The spirit of the French Treaty is not violated when a United States income tax covered by Article 2 of that treaty is credited by France or offset by a credit in the United States.  There is simply no inconsistency between the denial of a statutory foreign tax credit and the allowance of a treaty-based foreign tax credit for taxpayers eligible for the benefits of the French Treaty. Indeed, it would be fundamentally inconsistent with the very spirit of the French Treaty and one of its principal aims – to avoid double taxation – if a United States tax covered tax under the French Treaty could not be offset by a treaty-based foreign tax credit.[7]

### III.    Conclusion

In summary, the Defendant fails to provide a meaningful to answer either the Court's second or third questions.  For the reasons stated in the Plaintiffs' Supplemental Brief and as further explained herein, codifying the NIIT in Chapter 2A does not show any Congressional intent to disallow a foreign tax credit under applicable treaty provisions for those entitled to treaty benefits.  Moreover, the standards by which courts have for two hundred years determined

---

[7]     The Defendant errs in asserting that "[i]f one source allows a benefit with no indication to the contrary and the other denies it with no indication to the contrary, then harmonization is not possible and the last-in-date rule would apply." (Def. Supp. Br. at 10.)  To the contrary, harmonization in that context is simple:  if a statutory foreign tax credit is not allowed without regard to a treaty provision and a treaty-based foreign tax credit is allowed, the statute and the treaty are harmonized by allowing a treaty-based foreign tax credit, but only for persons eligible for the benefit of the treaty.

whether a treaty and a statute conflict are well established and, in this case, harmonization is easily achieved and results in a treaty-based foreign tax credit.

                              Respectfully submitted,

                              /s/ Stuart E. Horwich
                              Horwich Law LLP
                              20 Old Bailey, 5th Floor
                              London  EC4M 7AD
                              011 44 20 8057 8013
                              seh@horwichlaw.com
                              Counsel for Plaintiffs